## Floyd v. Philadelphia (No. 2)

*D. C. Harrison, Myron H. Deutsch* and *Gerald F. Tietz,* for plaintiffs.

*Stephen A. Corbman, Asst. City Solicitor, Thomas J. Ziomek, Edward W. Madeira, Jr., Irwin A. Popowsky, Mark A. Welge, Timothy J. Mahoney,*

*Barton L. Post, Joseph V. Pinto, Morton F. Daller, Paul J. Duca, Arnold P. Minicozzi, Frank M. Jakobowski, Fred B. Smith, Morris H. Zuber, Robert A. Korn* and *Lawrence G. Metzger*, for defendants.

SMITH, *J.*, August 18, 1978—These are class actions instituted under Pa.R.C.P. 1701-1716, which became effective September 1, 1977. The event generating the litigation occurred September 30, 1977, a leak of chlorine gas from a water treatment facility of defendant, City of Philadelphia. Plaintiffs in each action, alleging themselves to have suffered injury by inhalation of the escaping gas, brought these actions on behalf of all persons so injured. Plaintiffs in the Floyd case include within the class on whose behalf they undertake to sue claimants whose property was damaged by the mishap.

The City of Philadelphia, defendant, joined as additional defendants five of its suppliers of various products used in its water treatment facility, charging each with joint and several liability for the mishap by reason of the defective or substandard quality of its particular product alleged to have been involved in the occurrence. These additional defendants are Henry B. Pancoast, Inc. (as to supply of a certain bushing), ITT Grinnell Corp. (as to manufacture of the bushing), Pioneer Salt and Chemical Co. (as to supply of chlorine gas), Wallace and Tiernan, Inc. (as to supply of a certain valve used as a component part of the assembled treatment equipment), and Diamond Shamrock Co. (as to manufacture of the chlorine gas supplied by Pioneer Salt and Chemical Co.). Against the sixth additional party, Columbiana Boiler Co. (as to manufacture of the tanks in which the gas was

contained), the City of Philadelphia was unable to effect service and did not, therefore, perfect joinder of that party as an additional defendant.

Pleadings in both actions are closed, motions for certification as a class action under Pa.R.C.P. 1707(a) have been filed, and discovery with respect to class action issues pursuant to Pa.R.C.P. 1707(b) has been completed. The motions for certification have been thoroughly briefed and argued orally to the court, and now are ripe for disposition. On consideration of the pleadings, answers to interrogatories, depositions, affidavits filed in support of motions, etc., the court makes findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

1. At least 194 persons were exposed to chlorine gas in the accident in question in sufficient volume to cause them to seek hospital treatment or have it sought for them.

2. Of this total 107 were adults and 87 were children.

3. By far the greater proportion of adults seeking treatment were given only out-patient treatment and discharged.

4. A small number of adult claimants (seven) alleged serious injury or aggravation of preexisting conditions to have been suffered by inhalation of escaping chlorine.

5. Of the 87 children for whom hospital treatment was sought, 57 were given outpatient treatment and discharged.

6. Thirty children were admitted to various hospitals for inpatient treatment for various periods ranging from overnight to several nights stay.

7. The representative parties will fairly and adequately assert and protect the interests of the

class under the criteria set forth in Pa.R.C.P. 1709.

8. The attorneys for the representative parties will adequately represent the interests of the class.

9. The representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

## CONCLUSIONS OF LAW

1. The class is so numerous that joinder of all members is impracticable.

2. There are questions of law and fact common to the class.

3. The extent and nature of other litigation already commenced by members of the class involving any of the same issues, consisting of four actions only* (as presently known to the court), is not so great as to preclude prosecution of the great bulk of the other claims by means of class action.

4. Common questions of law or fact predominate over any question affecting only individual members.

5. In view of the complexities of the issues and the expenses of litigation, the separate claims of

---

*Robinson v. City, February 1978—No. 2965. (One adult and three minors): Alleged serious injury of upper respiratory tract, high blood pressure, severe damage to lungs and throat, may be permanent,may be loss of earning power.

Brinkley v. City, October 1977—No. 3027. (Two adults, both men): General allegation of injury of respiratory system and health.

Dreher v. City, February 1978—No. 2201. (Two adults, three minors); Allegations identical with Robinson.

Brady v. City, May 1978—No. 1024. (Two adults, husband and wife, though wife not a victim, claiming only loss of companionship, etc.): Alleged great aggravation of pre-existing emphysema, lung damage, breathing and respiratory damage, etc.

individual class members are insufficient in amount to support separate actions.

6. The claims of the representative parties are typical of the claims of the class.

7. The class action provides a fair and efficient method for adjudication of the controversy.

8. The difficulties likely to be encountered in the management of the action as a class action are not so great as to be forbidding.

9. The amount which may be recovered by individual class members is not likely to be so small in relation to the expense and effort of administering the action as to render a class action unjustifiable.

10. The particular forum is appropriate for the litigation of the claims of the entire class.

11. The representative parties have no conflict of interest in maintaining the class action.

12. The facts and law bearing on the issue of liability are so nearly common to all claimants as to require all claimants to constitute a single class for determination in a trial restricted to that issue.

13. The damage claims of individual claimants vary sufficiently as to require either that they be grouped in subclasses for trial of that issue separately for each group, or tried individually.

14. The two actions above entitled should be consolidated for trial and certified as a single class action.

## DISCUSSION

The ultimate question whether and to what extent the two above-entitled actions should be certified as class actions, pursuant to Pa.R.C.P. 1710, finds an answer in careful consideration of three preliminary points of concern, viz.:

(1) Is there anything in the inherent nature of

claims stemming from a mass accident or a multi-victim tort that makes them unsuitable or inappropriate or unfeasible for adjudication through the class action device?

(2) Is the nature of the claims arising from the single accident or tort here in question such as to make class action prosecution of them unworkable?

(3) Are the differences among the claims so great as to make their proper adjudication impossible or unworkable by holding some of them subject to class action treatment for all purposes, and others so subject for only limited purposes?

I

Concern arises over the propriety of imposing the class action device on claims stemming from any mass accident or multi-victim tort by reason of a broad contrary position taken by the advisory committee serving in connection with the 1966 revision of Fed.R.C.P. 23. The view of that committee, published at 39 F.R.D. 69, at 103, reads:

"A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple law suits separately tried."

Professor Moore, himself reputed (81 Harvard Law Review 377) to be the chief draftsman of the revised Fed.R.C.P. 23, however, takes no such categorical position. At 3B Moore's Federal Practice, ¶23.45[3], at 23-811 n. 35 (2d ed. 1969), is the

statement: "The argument for class action treatment is particularly strong in cases arising out of mass disasters such as an airplane crash in which there is little chance of individual defenses being presented." Another commentator, Kaplan, at 81 Harvard Law Review 356, at 393, has analyzed the supposed incompatibility of the class action device and multiple-victim tort claims in these terms:

"What makes against a class action here is not the fact that after determination of common questions the individual claimants might have to come in and prove their damages, for such follow-up proceedings will occur in various [F.R.C.P. 23](b)(3) actions [bracketed references supplied]. The point rather is that in accident cases the realities of litigation will often suggest that the class procedure is not 'superior' to more commonplace devices; in some of these cases, moreover, individual questions of liability and defense will overwhelm the common questions."

A judicious balancing of the pertinent considerations is also to be found in a note, Mass Accident Class Actions, 60 Cal.L.R. 1615, 1620 (1972), as follows: "The predominance requirement can be met by most mass accident cases if the class action is limited to the issue of liability and if choice of law rules do not require the application of differing laws to individual members of the class of plaintiffs." And further, (idem. p. 1639):

"Whether a claim will be of such high financial and emotional value as to preclude joining a class action reduces to whether it is for personal injury rather than property damage, for wrongful death rather than a lesser harm.

"Therefore, the two critical characteristics of mass accidents that make some less appropriate for

class action treatment than others are whether the class members are of diverse citizenship and whether their claims are for high value personal injuries or wrongful death."

It is thus made apparent that there is no absolute proscription of class action treatment of claims of victims of a mass tort. Even authorities dealing with class actions outside the personal injury field contain statements indicating how the class action device can be made potentially useful in mass tort litigation. These statements are helpful toward determination of the present question. Thus in the City of Philadelphia v. American Oil Co., 53 F.R.D. 45, at 67 (D.C.N.J. 1971), it was said: " . . . The issues of liability can be separated from questions of individual damage when deciding if common issues of fact and law predominate over individual questions." (Citations omitted.) To the same effect is Frankel v. Wyllie and Thornhill, Inc., 55 F.R.D. 330 (D.C.W.D. Va. 1972), at 334:

" . . . True, special handling of the claims may be required, but the differences appear to bear only upon the ultimate computation of damages, which does not justify dismissal of the suit as a class action, Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y. 1966). Any potential rivalry among class members after the issue of liability is decided can be adequately treated since Rule 23(c)(4) gives the court the power to divide the class into appropriate subclasses or to require members to bring individual suits for damages. Eisen v. Carlisle & Jacquelin, 391 F. 2d 555 (2nd cir. 1968)."

City of New York v. General Motors Corp., 60 F.R.D. 393 (D.C.S.D. N.Y. 1973), at 395, is of similar import:

" . . . Should plaintiff succeed in proving that common claim, the complications which might arrive by virtue of differences in the nature and extent of damages may be minimized by the establishment of separate proceedings to determine damages or by the determination of formulae for the assessment of damages sustained by various members of the class. Should plaintiff fail to prove its underlying claims, defendant would be spared relitigation of those issues by similarly situated potential plaintiffs."

A number of our Federal courts have directly confronted the supposed ill fit of the class action harness to multiple personal injury claims of common origin, and have found otherwise. The District Court for the Eastern District of Pennsylvania in Bentkowski v. Marfuerza Compania Maritima, S.A., 70 F.R.D. 401 (D.C.E.D. Pa. 1976), at 404, has said:

"First, in considering the interest of the class members to individually control the prosecution of their action it is believed that the nature and extent of the injury for which redress is sought is of overriding significance.[7] In the present case, the relatively minor injury sustained, considered together with the sole question of [sic] [which] the class action seeks to resolve—the negligence of defendants—indicates that a collective prosecution is preferable to individual suits. Fed.R.Civ.P. 23(b)(3)(A).

"7. Most of the cases cited by defendants in support of their position contra class certification which discuss the propriety of class actions arising out of mass accidents involve airplane crashes. The inherent complexities of establishing liability and the dimension of the damage question in cases involving death and serious bodily injury pro-

vide ample reason for survivors or next-of-kin in such cases to individually pursue their cause of action. For example, defendant has cited Palas v. Trans World Airways, Inc. et al., 75 Civ. 209 (S.D.N.Y. 1975), where this conclusion was expressly reached."

A kindred view was expressed in Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558 (D.C.S.D. Fla. 1973), at 560:

" . . . A class action determination that would encompass the issues of negligence, proximate cause and damages would rarely be adequate in a mass tort. If the application of the technique is limited to those issues in which uniformity of result is certain, however, the rule retains its viability, even in a mass accident setting. That is, issues such as proximate cause and negligence must be subject to a clear cut determination before a class action can be maintained on those issues."

Predominance of common questions over any others was readily found in American Trading and Production Corp. v. Fischbach & Moore, Inc. , 47 F.R.D. 155 (D.C.N.D. Ill. 1969), at 156, even though individual members of the class, after determination of the common question, might have been required to present evidence of their particular damage. The court said in part: " . . . All exhibitors, including the plaintiffs, stand in the identical position with respect to the following issues: (1) the origin of the fire, (2) the parties responsible for causing it, and (3) the legal liability of the defendants for the damage."

Pertinent determining criteria were also well stated in Causey v. Pan American World Airways, Inc., 66 F.R.D. 392, 397 (D.C.E.D. Va. 1975):

"On balance, it is the Court's view that under

some circumstances mass accident litigation may and ought to be maintained as a class action. Perhaps the paradigm situation in which such treatment would be appropriate is one where: (1) the class action is limited to the issue of liability; (2) the class members support the action; and (3) the choice of law problems are minimized by the accident occurring and/or substantially all plaintiffs residing within the same jurisdiction . . . "

This court is, therefore, firmly persuaded that the instant litigation represents a proper case for class action treatment, certainly as to the issue of liability, at least. Plainly, there is a common question of fact predominant over all others: that is, how this leak of a harmful gas occurred and by whose fault. Every member of the assserted class has a common stake in this issue. There are no apparent questions of causation, of intervening or superseding cause, of whether or not the leak of the chlorine gas was a substantial factor in the harm suffered by the class members, considerations such as moved our brother, McDevitt, *J.*, to deny class action treatment to suitors whose homes and property were damaged or destroyed by the same lumberyard fire in Williams v. New Deal Lumber and Millwork Co., Inc., and Farbstein, C. P. Phila. Co., May Term, 1976, no. 6014. In the case at bar, there is no plausible indication of the existence of defenses against the claims of some but not all members of the class. The suggestion was advanced at argument that some foolhardy residents of the neighborhood might have remained in their homes in the face of police warnings to evacuate, or, out of curiosity, gone straight to the water treatment facility itself and there may have become exposed to copious

inhalation of the noxious escaping gas. There is no evidence of this whatsoever up to this point of the litigation and the likelihood of it must, in the court's view, be considered negligible.

Of further significance is the fact that the class members here are not, like passengers on a commercial airline or bus, residents of many different states; they are almost certainly all residents of Philadelphia. The complicated multiple choice of law problems attending some mass transit disaster litigation which have kept some courts from according class action certification to actions arising in that factual context do not present themselves here. Neither will the damage claims, for the most part, be of the wide range represented by a case of deaths of many passengers in a public conveyance, with their widely different economic levels and life expectancies. The severity or lack of severity of ill effects suffered by the greater proportion of class members here is, to present indications, relatively or very nearly the same.

But overriding all these considerations is the outstanding characteristic of this asserted class, that the claims of many, perhaps most, of its members are for personal injuries or treatment of ill effects not serious enough from a practical standpoint to justify the expense of independent litigation, though no less thereby entitled to be redressed. Such a case is one for determination of which the class action is universally pronounced to be peculiarly apt. This feature of the utility of the class action is accentuated in the instant case to an extreme degree: responsibility for the mishap is charged to five additionally joined defendants, a course which, if followed, as presumably it would be, in an independently instituted action, would

make suit on a relatively small claim so burdensome as to be prohibitive. In a class action, conversely, each of the six defendants reaps the benefits pointed out in City of New York v. General Motors, supra, of having to defend only once as against many times for individually instituted actions.

It is the considered opinion of this court, therefore, that while certain mass torts are, by reason of particular circumstances affecting issues of liability or damages, distinctly not susceptible of class action treatment, that is not, as a general proposition, true of every case of mass tort. On the contrary, under different particular circumstances, some cases of mass tort appear to call peculiarly for class action determination.

## II

To pass from the general to the specific, the present case, for reasons already touched upon above, appears to be one to which class action treatment is readily adaptable. There are no features indicated as to issues of either liability or damage such as to suggest insoluble difficulty or even unworkability in treatment and management of the litigation as a class action. Not only is there broad commonalty among all the claimants as to the facts on which liability is alleged; besides that, the issues of fault as between original defendant and the five additional defendants are identical for every claim. On the issue of damages also, a certain homogeneity can be discerned within groups of claimants. Thus, the ill effects suffered by far the greater proportion of adult victims required only outpatient treatment. The same is said to be true of 57 children. Thirty

children are reported admitted to a hospital for varying periods of in-patient treatment. Ten to 15 adults are described as being admitted to hospital as in-patient, and statements made in deposition, or in the pleadings filed in the instant case, or in the four independently instituted actions, make the number of these adults suffering any serious or prolonged consequences no more than a half-dozen.

Class action conduct of trials of the issue of damages appears possible, therefore, by way of creation of subclasses for certain groups of claimants, but requiring other claimants to be excluded from any subclass and to engage in individual trials of the damage issue. Just such a procedure is referred to in 4 Newberg Class Actions, §7524(d), 40, as sanctioned by Detroit v. American Bakeries Co., (D.C.E.D. Mich. 1971), C.A. No. 33046, in which that court spoke as follows:

"In complex litigation such as the Courts are faced with in the anti-trust area, the issues of liability and damages are often severed so that they might be determined in separate proceedings. The Court agrees that such a procedure eliminates many of the problems inherent in the complicated and protracted lawsuit and will adopt it in this matter if circumstances so require. There are also a number of approaches to the question of damages which this Court has within its discretion to select. A special master could be appointed; the classes could be divided into subclasses; or, the Court could order separate trials."

### III

The differences among the claims appear to be restricted entirely to the injury or loss they represent, and the amount of damages that might be

recovered therefor. They are alike in the proof they face of operative facts and causation, and so great is their commonalty on that issue that a single trial limited to the question of liability appears highly desirable for not only all the claimants but for the multiple defendants as well. In the event a verdict on liability were to be returned against one or more parties defendant, sufficient homogeneity on the issue of damages appears among a considerable number of claims to justify their being grouped into subclasses for trial of that issue, yet as to the injury and loss asserted by some claimants, there remains sufficient individuality to require those cases to go to separate trial on damages. Specifically, the record shows, or it has been asserted to the court in argument, that at least three adult claimants allege aggravation of a pre-existing condition, emphysema, by the inhalation of the escaping chlorine, one with very serious and prolonged after-effects. Though the claims in this small group have in common allegations and perhaps proof of aggravation of the same pre-existing condition, predictably they will vary in proof as to the age of the claimant, the degree of aggravation, the seriousness or duration of the ill effects, etc. Within this small group the common question, aggravation of the pre-existing condition, will not predominate over the other factual issues, and these claims cannot be grouped for trial as a subclass by a single fact-finder, judge or jury. Inevitably, in any kind of common trial of damages, either the less serious or the more serious case or cases would suffer by comparison with the other. Even more would this result, less or more serious suffering by comparison, if this small group of cases were lumped with subclasses of other claimants, such as those whose ill effects required only outpatient treatment, and

were heard by the same jury. The court is persuaded, therefore, that this relatively small number of claims, including those on which independent suits have already been or are hereafter instituted, though embraced within a single class for trial of the issue of liability, must be tried separately on the issue of damages.

Some other claims which on the record to date appear to be capable of inclusion in a subclass for trial of damages, could conceivably be more serious than the kindred claims of the subclass. A useful mechanism for determination whether any claim deserves separate trial of damages, either the few serious ones above referred to, or one of the presumably subclass claims possessing more serious aspects than now appear, is provided by our own local rule of court.

This is Philadelphia Court Rule 160, providing for designation of a case as a major case. It will be part of this court's order being entered here, accordingly, that for a claimant in the class being here defined to be entitled to a separate trial of the issue of damages, apart from that conducted for any subclass, his case must be designated a major case pursuant to Rule 160, after the filing of an appropriate petition thereunder by counsel for the class representative.

With creation of subclasses of the generally homogeneous claims, and separate prosecution of the more serious claims, for trial of the issue of damages, accordingly, proper allowance will have been made for differences among the claims. Some of them will have been held subject to class action treatment for all purposes, some for the limited purpose of determination of liability only. This on

the strength of a considerable body of decided authority (Newberg, op. cit. Vol. 4, p. 41, n. 310) seems a permissible and feasible adaptation of the class action device, and promises fair and proper adjudication of all claims.

Reference to Philadelphia Court Rule 160 raises the question whether claims not of such seriousness as to attain major case designation under that rule should, for determination of the damages they represent, be tried by panels of arbitrators under our compulsory arbitration practice (jurisidiction up to $10,000), or in the Municipal Court of Philadelphia (civil damage jurisdiction up to $1,000). This is the normal consequence in local practice of failure to win major case designation under Philadelphia Court Rule 160. Since appeal as of right to this court would lie from award or judgment rendered by one or the other of these tribunals, only a wasteful circuity can be discerned for a claim already in this court as one of a class, not to be held here for all purposes, rather than being remitted to an inferior tribunal for determination of an issue ultimately appealable here. Retention of jurisdiction by this court will also make for more direct and efficient management of the action on the parts of both the court and counsel for the class representative. The policy reasons underlying the creation of jurisdiction over smaller claims in compulsory arbitration panels and the Municipal Court of Philadelphia, i.e., the saving of judicial manpower and jury and courtroom time and expense, are also less compelling when the full scale trial in this court will be one potentially disposing of several score claims in a single subclass proceeding instead of only an individual claim. The order being

entered herewith will provide for trial in this court of the issue of damages for all claims within the class.

Some legal scholars have expressed profound misgivings as to the constitutionality of bifurcated trial of issues of liability and damages, even when resolved by the same jury [Professor (now Judge) Jack B. Weinstein, Routine Bifurcation of Jury Trials, etc., at 14 Vand. L.R. 831, 835 (1960-61)]. A fortiori this argument is urged against submission of the bifurcated issues to different juries: Hosie v. Chicago & N.W. Ry., 282 F. 2d 639, 642 (7th Cir. 1960), cert. den. 365 U.S. 814 (1961) (dictum). The Constitutional infirmity of the practice in the eyes of these scholars is that it represents violation of the guarantee of jury trial as conducted at the time of adoption of our Federal Constitution.

Other eminent scholarship adheres strongly to the opposite view (Newberg op. cit., Vol. 3, §4640, p. 93, n. 16), at least where the issue to be tried by the second jury is so distinct and separable from the others that a trial of it may be had without injustice. The present case strikes this court as capable of this description, allowing the court to conclude that a bifurcated trial may be ordered without impairment of the right to jury trial of any claimant.

The findings of fact, conclusions of law, and points dealt with in the foregoing discussion, accordingly, lead to the following

## ORDER

And now, this August 18, 1978, on motion of David C. Harrison, Esq., and Gerald F. Tietz, Esq.,

counsel respectively for plaintiffs named in the above-entitled cases:

1. Said cases are consolidated as a single action, and the action so consolidated is hereby certified as a class action to be conducted under Pa.R.C.P. 1701-1716, inclusive.

2. The class represented in said action shall consist of all persons who may have suffered personal injury or property damage as a result of escape of noxious substances from defendant City of Philadelphia's water treatment facility, located in the vicinity of Abbottsford Road and Fox Street, Philadelphia, on September 30, 1977, or other persons so related (spouses, parents, etc.) to those suffering such injury as thereby to possess derivative claims to recover.

3. Counsel for the class shall be the aforesaid David C. Harrison, Esq., and Gerald F. Tietz, Esq., acting jointly.

4. Every person described in paragraph 2 above of this order shall be a member of the class unless by October 30, 1978, he, or if he be a minor, an adult who is certified to this court by class counsel as having the right to act on his behalf, files of record a written election to be or to have him excluded from the class.

5. The class shall be treated as a single class for trial, jury or non-jury, of the issue of liability of one or more defendants.

6. If said trial results in a finding of liability of one or more defendants, the single class shall thereupon be divided into subclasses as follows:

(a) Minor members who as a result of exposure to the noxious substance in question required only

out-patient hospital or medical treatment.

(b) Adult members who as a result of exposure to the noxious substance in question required only out-patient hospital or medical treatment.

(c) Minor members who as a result of exposure to the noxious substance in question required more than out-patient medical treatment.

(d) Adult members who as a result of exposure to the noxious substance in question required more than out-patient medical treatment.

(e) Members whose property was damaged as a result of exposure to the noxious substance in question.

7. Each such subclass shall include also any parent, spouse, etc., of a member possessing a derivative claim resulting from the injury suffered by the member.

8. For each of the above subclasses, separate trial, jury or non-jury, shall be held on the issue of the damages any member of the subclass is entitled to recover.

9. Any member of any of the above subclasses who, by petition pursuant to Philadelphia Court Rule 160, is granted designation of his case as a major case shall be entitled to separate trial, jury or non-jury, apart from any of the subclass trials described above, of the individual damages he may be entitled to recover. It shall be the duty of counsel for the class representative to determine whether such a petition should be filed for a particular case, and to prepare and file the same.

10. Trial of the issue of damages shall, as to every member of any subclass, be held in this court, without reference to a compulsory arbitration panel or to the Municipal Court of Philadelphia.