530 A.2d 499

Wayne Cook and Edna Cook, his wife, et al., Appellants *v.* Highland Water and Sewer Authority, et al., Appellees.

Father Stephen Slavik et al., Appellants *v.* Greater Johnstown Water Authority and Laurel Management, Inc., et al., Appellees.

Harold J. Hochstein et al., Appellants *v.* Commonwealth of Pennsylvania, Department of Transportation, et al., Appellees.

Argued May 19, 1987, before President Judge CRUMLISH, JR., and Judge COLINS, and Senior Judge KALISH, sitting as a panel of three.

*David C. Harrison,* with him, *Myron H. Deutsch* and *Arthur L. Pressman,* for appellants, Wayne Cook et al., Father Stephen Slavik et al., and Harold J. Hochstein, et al.

*Dino S. Persio,* for appellants, Dino A. Persio and Rosemary Persio, his wife, et al.

*Joseph D. Messina,* for appellee, Highland Water and Sewer Authority.

*Robert L. Byer,* for appellee, Greater Johnstown Water Authority.

*Donald P. Minahan,* Deputy Attorney General, for appellee, Commonwealth of Pennsylvania.

*Mark J. Gesk,* for appellee, Neilan Engineers, Inc. and South Ford Water Co.

*Edward G. Kuyat, Jr.,* for appellee, Poorbaugh Lumber Co.

*Randall C. Rodkey,* with him, *J. Michael Doherty,* for appellee, L. Robert Kimball.

*Herman C. Kimpel,* for appellee, Nine, Inc.

*Avrum Levicoff,* for appellee, Laurel Management, Inc.

*Robert Given Rose,* with him, *W. Arch Irvin, Jr.,* and *Mark J. Gesk,* for appellee, Gannett, Fleming, etc.

*William B. Mallin* and *Richard F. Rinaldo,* for appellee, Bethlehem Steel Corp.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., August 5, 1987:

Wayne Cook and Edna Cook et al. (Cook) (No. 15 T.D. 1986), Father Stephen Slavik et al. (Father Slavik) (No. 18 T.D. 1986), and Harold Hochstein et al. (Hochstein) (No. 1778 C.D. 1986) appeal three separate orders of the Cambria County Common Pleas Court denying class action certification. Due to the common genesis of these actions and the identity of the legal issues involved, these appeals have been consolidated for our review.[1]

Cook, Father Slavik and Hochstein (Appellants) are the unfortunate victims of the 1977 Johnstown Flood, during which approximately twelve inches of rain fell in two days. They seek damages resulting from the collapse of two dams and the washout of a state highway, allegedly caused by the negligent design and maintenance of the respective appellees, Highland Water and Sewer Authority et al., Greater Johnstown Water Authority et al., and the Department of Transportation (DOT).

Cook seeks to represent a class of approximately 100 individuals who suffered personal injuries and property damage as a result of the collapse of Sandy Run Dam. Two days of hearings were held during which Cook presented four witnesses. The parties stipulated to a joint exhibit consisting of a map which purports to represent the geographic areas encompassed by the proposed class.

Father Slavik seeks to represent a class defined as those claimants suffering injury to their persons or property as a proximate result of an alleged "backsurge" in the Conemaugh River caused by the overtopping and

---

[1] By Order dated July 15, 1986, this Court granted Appellants' petition to consolidate.

failure of the Laurel Run Dam. Father Slavik asserts that the collapse of the Laurel Run Dam and the debris resulting from the consequent destruction of Tannery-ville[2] clogged the channel of the Conemaugh River, which substantially impeded its flow and caused massive flooding of the Little Conemaugh and Stoneycreek River Valleys. Seven days of hearings were held during which the approximate time of the Dam's collapse was stipulated to. Father Slavik averred that the class would be limited to the areas of Morrellville, Coopersdale, Cambria City and Center City Johnstown.

Hochstein attempts to represent a class of persons who suffered personal injuries, property damage or economic loss by the erosion of State Route 56 and the concomitant flooding. Geographic limits to the class were again proposed. At trial, the following events were described. As a result of the erosion of State Highway 56, debris formed a dam across nearby Solomon Run. The dam eventually collapsed, unleashing a wall of water which crashed through the Solomon Run Valley, and massive flooding occurred in Dale Borough and Hornerstown. Hochstein contends that this chain of events was the direct result of the negligent design and maintenance of the highway.

After reviewing the evidence in each case, the trial court found that none of the appellants had established the prerequisites to class certification under Pa. R. Civ. P. 1702, 1708 and 1709[3] in light of substantial *individu-*

---

[2] Appellants indicate that the deaths and property damage resulting from the destruction of Tanneryville are the subject of several individual claims and are not part of this class certification appeal.

[3] The Pennsylvania Rules of Civil Procedure Nos. 1702, 1708 and 1709 are as follows:

**Rule 1702. Prerequisites to a Class Action**

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

*al* questions of proximate cause. The trial court found that the membership of each proposed class could not be determined until after the conclusion of a trial on the merits for each purported class member.

## SCOPE OF REVIEW
## CLASS CERTIFICATION PREREQUISITES

We note at the outset that "[t]rial courts are vested with broad discretion in determining the definition of a class as based on commonality of issues and the propri-

---

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

**Rule 1708. Criteria for Certification. Determination of Class Action as Fair and Efficient Method of Adjudication**

In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth in subdivisions (a), (b) and (c).

(a) Where monetary recovery alone is sought, the court shall consider

(1) whether common questions of law or fact predominate over any question affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would confront

ety of maintaining the action on behalf of the class."
*Klemow v. Time, Inc.*, 466 Pa. 189, 197, 352 A.2d 12, 16
(1976), *cert. denied*, 429 U.S. 828 (1976). A trial court's
class certification decision will not be disturbed on ap-
peal unless the court failed to consider the require-
ments of the rules or abused its discretion in applying
them. *Id.*

---

the party opposing the class with incompatible standards
of conduct.

(ii) adjudications with respect to individual members
of the class which would as a practical matter be disposi-
tive of the interests of other members not parties to the
adjudications or substantially impair or impede their abili-
ty to protect their interests;

(4) the extent and nature of any litigation already
commenced by or against members of the class involving
any of the same issues;

(5) whether the particular forum is appropriate for the
litigation of the claims of the entire class;

(6) whether in view of the complexities of the issues
or the expenses of litigation the separate claims of individ-
ual class members are insufficient to support separate
actions;

(7) whether it is likely that the amount which may be
recovered by individual class members will be so small in
relation to the expense and effort of administering the ac-
tion as not to justify a class action.

**Rule 1709. Criteria for Certification. Determination of
Fair and Adequate Representation**

In determining whether the representative parties
will fairly and adequately assert and protect the interests
of the class, the court shall consider among other matters

(1) whether the attorney for the representative par-
ties will adequately represent the interests of the class,

(2) whether the representative parties have a conflict
of interest in the maintenance of the class action, and

(3) whether the representative parties have or can ac-
quire adequate financial resources to assure that the in-
terests of the class will not be harmed.

The Pennsylvania Rules of Civil Procedure enumerate five prerequisites for class certification—numerosity; common questions of law or fact; typicality; adequacy of representation; and fairness and efficiency. Pa. R. Civ. P. 1702. The burden of proving each of these prerequisites is upon the parties seeking certification. *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Superior Ct. 120, 130, 451 A.2d 451, 454 (1982). However, because the requirements for class certification are interrelated and overlap to some extent, the class proponents need not prove separate facts supporting each; instead, it is sufficient to establish underlying facts from which the courts can make the necessary conclusions. *Id.* at 130, 451 A.2d at 455. While the class proponent's burden is not heavy, more than mere conjecture or conclusory allegations are required, particularly if other facts of record tend to contradict the propriety of the class action. *Id.*

Appellants contend that they have sustained their burden of establishing the five requirements for class certification under Rule 1702. We shall address each of these requirements in turn.

### NUMEROSITY

To be certified, each class proponent must show that the class is "so numerous that joinder of all members is impracticable." Pa. R. Civ. P. 1702(1). Whether the class is sufficiently numerous is not dependent upon any arbitrary limit but upon the facts of each case. *Janicik.* The trial court should take into consideration whether the number of potential individual suits would pose a grave imposition on the court's resources and an unnecessary drain on the litigants' energies and resources. *Temple University of the Commonwealth System of Higher Education v. Department of Public Welfare,* 30 Pa. Commonwealth Ct. 595, 374 A.2d 991 (1977).

The Cook representatives contend that they have established numerosity in that none of their witnesses could identify every person in the Sandy Run flood valley and that it would be impracticable to join all the claimants "at this late date." However, the trial court found that there were only a potential of five absent parties in addition to the ten parties who were *named* plaintiffs. Inasmuch as this finding is supported by the testimony of the witnesses presented by Cook, we agree with the trial court that the joinder of these parties would not have been impracticable.

The Slavik proponents likewise contend that the trial court erred in finding that they had not established the requisite numerosity for class certification. The evidence indicates that potentially as many as 1500 persons and 987 residences were affected by the Laurel Run Dam failure. Such evidence could arguably support a finding of impracticable joinder. However, as reviewed below, the trial court permissibly denied class certification based on the lack of common issues of law and fact.[4]

Lastly, the Hochstein class proponents contend that the path of destruction of the "tidal wave" caused by the collapse of Route 56 is well established in the record and that the people affected are as numerous and identifiable as those affected by the cloud of chlorine gas which occurred in *Floyd v. City of Philadelphia (No. 2)*, 8 Pa. D. & C. 3d 380 (1978).[5] As noted by the trial

---

[4] Although it appears at certain points that the trial court has overemployed the "commonality" analysis to evaluate the other Rule 1702 factors, we believe that such an approach was necessitated by the Appellants' definition of their classes in terms of causation. By characterizing the classes as "those persons injured by the dam break or roadway collapse," Appellants have essentially made commonality a threshold issue from which all other inquiries spring.

[5] Appellants rely heavily on *Floyd v. City of Philadelphia (No. 2)*, 8 Pa. D. & C. 3d 380 (1978), wherein class certification was

court, however, little evidence was presented to enable the court to define the scope or even existence of the proposed Hochstein class. The court specifically acknowledged the undisputed testimony presented by the Hochstein class representatives which described *general flooding conditions* throughout the entire geographical area *prior* to the time when Route 56 allegedly collapsed. We concur with the trial judge that the extent of the flooding conditions made it difficult if not impossible to adequately pinpoint those damages which may have been attributable to the Route 56 washout. Hochstein's conclusory allegations, without more, contradict the propriety of its class petition. *Janicik* at 129-130, 451 A.2d at 455. Therefore, we hold that both the Cook and Hochstein class proponents have failed to sustain their burden of establishing numerosity.

## COMMON QUESTIONS OF LAW OR FACT (COMMONALITY)

Under Pa. R. Civ. P. 1702(2), appellants must establish "questions of law or fact common to the class." While the existence of individual questions essential to a class member's recovery (*e.g.*, the amount of damages) is not necessarily fatal to class certification, common questions of law or fact must *predominate* over individual questions. Pa. R.Civ. P. 1708(a)(1). *Cambanis v. Nationwide Insurance Co.*, 348 Pa. Superior Ct. 41, 49, 501 A.2d 635, 639-40 (1985). "The common question of fact means precisely that the facts must be substantially

---

permitted for 194 persons who had been exposed to a chlorine gas leak. While this opinion contains an instructive discussion of the applicability of the class action treatment in so-called "mass tort" cases, we recognize, as Appellants must, that *Floyd* is not binding upon this Court. Although *Floyd* is illustrative, we nevertheless believe that the instant appeal is readily distinguishable because, unlike *Floyd,* there are substantial "questions of causation, of intervening or superseding cause." *Id.* at 390.

the same so that proof as to one claimant would be proof as to all. This is what gives the class action its legal viability." *Allegheny County Housing Authority v. Berry,* 338 Pa. Superior Ct. 338, 342, 487 A.2d 995, 997 (1985).

Applying the commonality standard to the instant facts, the trial court found in each case that there were several factors which could have caused the appellants' damages. Runoff from the surrounding mountainside, various "damming" effects, the overflow of water channels in the area, the location and elevation of each property as well as the unprecedented rainfall all contributed in varying degrees to the damages suffered by the proposed class members. The trial court concluded that the class proponents had failed to establish that the alleged negligent design and maintenance of the respective structures was the *proximate cause* of the damages sustained by each member of the proposed classes.

Appellants contend that the trial court erred as a matter of law by fixating on a perceived need to rule out all other possibilities of causation and by confusing the issue of damages with that of liability. They cite several issues which they contend are common to the members of each proposed class[6] and thereby satisfy the com-

_____

[6] For example, in the context of the Slavik appeal, the following "common" issues are identified:

(a) Was the collapse of the Dam caused by the culpable acts of some or all of defendant [sic] and/or by their breaches of duty to class members?

(b) Did the resulting debris from the collapse so clog the channel of the Conemaugh as to cause it to flood its banks, causing the damage for which claim is made?

(c) Was there a sudden rise in the level of the Conemaugh, after the collapse of the Laurel Run Dam resulting in massive flooding along the banks of this river?

(d) Was this sudden rise of water caused by the collapse of the Dam?

(e) Did the collapse and the resulting flooding cause emotional distress?

monality requirement. Moreover, they maintain that the evidence clearly reveals a qualitative difference between the damages related to generalized flooding and the devastation attributable to the alleged "tidal waves" created by the dam failures and highway washout.

While we believe that appellants' contentions are not entirely without merit, we conclude that the trial court did not abuse its discretion in refusing to certify these class actions based on a lack of commonality.

Initially, we do not believe that the trial court "fixated" upon a need to rule out all other possible causation; rather, it considered the various flood sources during the torrential downpour of July 19-20, 1977, and, based on that review, could not reasonably conclude that dam failure or roadway collapse was the proximate cause of a substantial part of each party's damages. Appellants appear to presume erroneously that evidence of proximate causation, a critical element of a negligence theory, need not be demonstrated in the class action context.[7]

Moreover, appellants apparently misapprehend the distinction between damages and *liability* for damages. Where a common source of liability can be clearly identified, varying amounts of damage among the plaintiffs will not preclude class certification. *Cambanis.* However, where there exists various intervening and possibly

---

[7] Appellants also contend that the trial court erroneously required each proposed class to prove a prima facie case on the merits. However, Appellants' argument confuses a prima facie showing of a common issue of law or fact with proof of the merits of the case in chief. *See Allegheny County Housing Authority.* In this instance, Appellants' definition of the respective classes in terms of specific factual sequences caused the trial court to properly inquire into the "proximateness" of the alleged causal relationship. Finding instead substantial evidence of numerous intervening causes, the trial court properly determined that a "prima facie" showing of commonality had not been made.

superseding causes of the damage, liability cannot be determined on a class-wide basis. *Allegheny County Housing Authority.* Further, although appellants' identify several other negligence issues which are presumably common to all proposed class members, we do not believe that the critical issue of proximate cause has been sufficiently established as common to compel class certification in these cases. Concerning appellants' contention that there is a qualitative difference between the damage caused by generalized flooding and the dam or roadway failures, we affirm the trial court's conclusion, based on our careful review of the evidence, that substantial unresolved questions of proximate causation remained and that these issues could only be determined on an individual basis for each aggrieved party.

Although our resolution of the numerosity and commonality issues precludes class certification as to Father Slavik, as well as the Cook and Hochstein class proponents, we will briefly review the remaining Rule 1702 prerequisites.

TYPICALITY, ADEQUACY OF REPRESENTATION, FAIRNESS AND EFFICIENCY

As for the requirements of Pa. R. Civ. P. 1702(3) and 1702(4), the trial court concluded that it could not determine that the claims of the class representatives were *typical* of the proposed class,[8] nor that the class repre-

---

[8] The typicality requirement is closely akin to the requirements of commonality and the adequacy of representation. *Ablin, Inc. v. Bell Telephone Co. of Pennsylvania,* 291 Pa. Superior Ct. 40, 435 A.2d 208 (1981). Its purpose is to determine whether the class representatives' overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that pursuit of their interests will advance those of the proposed class members. *Id.*

sentatives could adequately represent the class[9] inasmuch as the proposed classes had not been adequately identified. Although this reasoning appears somewhat circular, we believe that a typical claim has not been demonstrated in light of the multitude of factors which variously affected the proposed class members. The "adequacy of representation" analysis is likewise strained in that a sufficiently identified class must first exist to enable the court to determine whether the class proponents will adequately represent the interests of that class. Based on these conceptual difficulties, we cannot say that the trial court's resolution of these issues was an abuse of its discretion.

Lastly, the trial court entered into lengthy and thoughtful discussions on the issue of whether the proposed class actions were fair and efficient methods of adjudication in these instances. Rules 1702(5), 1708. Relying primarily on its previous "commonality" analyses, it determined, *inter alia,* that individual issues were predominant over common issues and that, on balance, the interests of all the litigants would be best served by individual trials. Once again, the inability of each group to adequately delineate its scope persuaded the trial judge that class action certification was inappropriate.

In light of the foregoing discussion, we affirm the trial court's denial of class certification in each of the respective appeals.

---

[9] In determining adequacy of representation, the three factors contained in Pa. R. Civ. P. 1709 must be considered. In this instance, the trial court did evaluate these factors and, although its finding could be considered somewhat speculative, we decline to catechize them here based on our foregoing "commonality" analysis.

ORDER IN 15 T.D. 1986

The Cambria County Common Pleas Court order, Nos. 1979-3485, 1979-3483 and 1979-3506 dated August 21, 1985, denying class certification, is affirmed.

ORDER IN 18 T.D. 1986

The Cambria County Common Pleas Court order, No. 1979-3486 dated August 21, 1985, denying class certification, is affirmed.

ORDER IN 1778 C.D. 1986

The Cambria County Common Pleas Court order, Nos. 1979-3487, 1979-3513, dated August 21, 1985, denying class certification, is affirmed.

Judge COLINS concurs in the result only.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent.

Trial courts are vested with broad discretion in determining definitions of a class as based on commonality of the issues. Such a determination will not be disturbed on appeal unless the court failed to consider the requirements of the rules or *abused its discretion in applying them. Klemow v. Time, Inc.,* 466 Pa. 189, 352 A.2d 12 (1976); *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975).

The majority concludes that "[a]ppellants appear to presume erroneously that evidence of proximate causation, a critical element of a negligence theory, need not be demonstrated in the class action context." It further states that "we do not believe that the critical issue of proximate cause has been sufficiently established as common to compel class certification in these cases," and that "substantial unresolved questions of proximate causation remained and that these issues could only be determined on an individual basis for each aggrieved party."

In determining the propriety of a class action, the question is not whether the appellants have stated a cause of action or will prevail on the merits, but rather whether the requirements of the class action rules are met. These rules delineate the scope of inquiry to be exercised by the trial court in passing on a class action motion. I see nothing in the rules that requires the necessity or propriety of an inquiry into the merits. To do so would allow the trial court to turn the motion for a determination of a class action into a motion for summary judgment. *Miller v. Mackey International, Inc.*, 452 F.2d 424 (1971); *Kahan v. Rosenstiel*, 424 F.2d 161 (1970).

The causal connection between appellants' damages and injuries and appellees' conduct should be established at trial. In order for a tort-feasor to be legally responsible for the consequences of a tortious act, the act, in addition to being the cause in fact of the harm complained of, must be the proximate or legal cause of the harm which is a substantial factor in causing the harm complained of. RESTATEMENT (SECOND) OF TORTS, §431 (1965); *Wisniewski v. The Great Atlantic and Pacific Tea Co.*, 226 Pa. Superior Ct. 574, 323 A.2d 744 (1974). The proximate cause need not be the sole cause. It is sufficient that it be a substantial contributing factor. *Hoover v. Sackett*, 221 Pa. Superior Ct. 447, 292 A.2d 461 (1972).

Furthermore, throughout the class action, the court has extensive powers to insure the efficient conduct of the action, and it has the power to revoke, alter, or modify the certification order if later developments in the litigation reveal that some prerequisite to certification is not satisfied. *See* Pa. R.C.P. Nos. 1710, 1711, 1713.

I believe there was a clear abuse of discretion by the trial court in denying the motion for a class action.