TEXAS DEPARTMENT OF TRANSPORTATION, Harris County Flood Control District, Brazoria Drainage District No. 4, Bernard Johnson Incorporated, Bernard Johnson, Inc., and Bernard Johnson Environmental, Inc., Appellants,

v.

Herb BARRIER and Cynthia DeLeon, as Representatives of a Class of Individuals and/or Entities Similarly Situated, Appellees.

No. 14–00–00014–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 1, 2001.

Patrice Pujol, James L. Cornell, James Newsom, Sandra D. Hachem, Houston, Randall M. Ward, Gregory S. Coleman, Kurt Howard Kuhn, Austin, for appellants.

Charles Musselwhite, Patricia M. Rosendahl, Newton B. Schwartz, Benton Musselwhite, Houston, Samuel I. Lee, II, Angleton, N. Terry Adams, Jr., Jeff Nobles, Houston, Benjamin Best, II, Pearland,

Dennis Reich, Robert J. Binstock, Andrew T. McKinney, Patricia Ronsedahl, Gordon Wright,Henry C. Kollenberg, Chris E. Ryman, Aubrey Martin Jr., Lawrence A. Lynn, Houston, for appellees.

Panel consists of ANDERSON, FOWLER, and EDELMAN, JJ.

## OPINION ON MOTION FOR REHEARING

EDELMAN, Justice.

Appellees' motion for rehearing is overruled, the opinion issued in this case on November 9, 2000, is withdrawn, and the following opinion is issued in its place.

In this interlocutory appeal, appellants challenge the trial court's certification of this case as a class action. We reverse the certification as to the claims against appellants and remand.

### Background

Appellees are representatives of two classes of residential property owners in Harris and Brazoria Counties whose properties were allegedly damaged by a flood in 1994. Appellants, Texas Department of Transportation, Brazoria Drainage District No. 4, and Harris County Flood Control District (collectively, the "governmental appellants") were allegedly involved in the design and/or construction of the relevant portion of Beltway 8 and its drainage system.[1] Appellants Bernard Johnson Incorporated, Bernard Johnson, Inc., and Bernard Johnson Environmental, Inc. (collectively, "BJI") were allegedly involved in the development of certain residential subdivisions in the relevant area (the "subdivisions").

---

1. For purposes of this opinion, Beltway 8 and its drainage system will simply be referred to as "Beltway 8."

Appellees filed a class action against appellants claiming that the manner in which the governmental appellants designed and constructed Beltway 8 and in which BJI developed the subdivisions caused more severe flooding to properties owned by the proposed class members than would have otherwise occurred.[2] After holding hearings on appellees' motion to certify a single, larger class, the trial court instead certified two subclasses representing considerably fewer property owners and a smaller aggregate area than appellees had proposed.[3] In addition, this certification was "as to liability issues only." Appellants appeal this certification order (the "order") on the ground that the lawsuit is not suitable to be conducted as a class action at all.[4]

## Preservation of Error

As a preliminary matter, appellees contend that appellants waived their complaint because they did not make a post-ruling objection to the trial court's class certification. Appellees contend that because the trial court's ruling diverged from certifying the single, larger class that they had proposed, appellants' response to appellees' certification motion did not address the trial court's ruling, and thus a further, post-ruling objection was required to preserve error on that ruling.

Had appellants' response to the class certification motion merely opposed the manner in which appellees sought to *define* the class, appellees' argument would be more persuasive. However, because appellants' joint response to appellees' motion instead opposed class certification in this case altogether, the fact that the trial court's ruling differed in the manner in which the classes were constituted did not necessitate a further objection to preserve that complaint. Accordingly, we overrule appellees' challenge to appellants' preservation of error and turn to the merits of the appeal.

## Class Certification

### Standard of Review

A trial court's ruling on class certification is reviewed for abuse of discretion. *See Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425, 439 (Tex.2000) (holding that class certification was an abuse of discretion). A clear failure by a trial court to analyze or apply the law correctly is an abuse of discretion. *McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995).

Class certification is governed by Texas Rule of Civil Procedure 42. *Bernal,* 22 S.W.3d at 433. Certification of a lawsuit as a class action requires satisfaction of all four of the conditions of Rule 42(a)[5] and at

---

**2.** In particular, appellees allege that the construction of Beltway 8 and the subdivisions blocked the natural runoff of rainwater across the flood plain, increasing the volume and velocity of rainwater flowing into Clear Creek.

**3.** Although not material to our disposition, the certified subclasses are also more restrictive than the proposed class in including only residential property that had suffered structural flooding damage but had not previously suffered internal flooding since at least 1970.

**4.** The briefs reflect that the following parties were also defendants in this lawsuit but did

not appeal the trial court's certification order: General Homes Corporation, Brown & Root, Inc., J.D. Abrams, Inc., Pulte Home Corporation of Texas, James T. Lynch, Inc., U.S. Home Corporation, Mastermark Homebuilders, Inc., Lennar Homes, Coenco, Inc., and Hometown Concepts, Inc. d/b/a Hampton Homes. Because the jurisdiction of this court has not been invoked with regard to the portion of the trial court's certification order pertaining to these defendants, we express no opinion on it.

**5.** The Rule 42(a) conditions are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

least one of the conditions of Rule 42(b). Tex.R.Civ.P. 42(b). As to the Rule 42(b) conditions in this case, the trial court found that appellees satisfied: (i) Rule 42(b)(1)(A) in that the prosecution of separate actions would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the parties opposing the class; and (ii) Rule 42(b)(4) in that the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See id.* Because we conclude, as discussed below, that neither of those Rule 42(b) conditions was met in this case (and because appellees do not contend that the remaining conditions of Rule 42(b)(1)(B), (b)(2), or (b)(3) were satisfied in this case), we confine our review to those two conditions.

■ The class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment. *Bernal,* 22 S.W.3d at 437. Ideally, a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim. *Id.* at 434.

■ The Rule 42(b)(4) predominance requirement is intended to prevent class action litigation where the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses. *Id.* Courts determine if common issues predominate by identifying the substantive issues of the case that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, those common to the class. *Id.* The test for predominance is not whether common issues outnumber uncommon issues but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Id.*[6] If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate. *Id.*

■ Courts must perform a rigorous analysis *before* ruling on class certification to determine whether all prerequisites to certification have been met. *Id.* at 435. Although it may not be an abuse of discretion to certify a class that could later fail, "it is improper to certify a class without knowing how the claims can and will likely be tried." *Id.* Therefore, "[a] trial court's certification order must indicate how the claims will likely be tried so that conformance with Rule 42 may be meaningfully evaluated." *Id.*

For example, in *Bernal,* Southwestern was sued by over 900 claimants for personal injuries resulting from an explosion, fire,

of law or fact which are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Tex.R.Civ.P. 42(a).

6. The nonexhaustive list of factors to consider in determining if (b)(4) certification is appropriate includes: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *See* Tex. R.Civ.P. 42(b)(4).

and release of toxic substances at Southwestern's refinery. *See id.* at 428–29. The trial court certified the case as a class action and ordered the trial to be conducted in phases whereby the issue of Southwestern's liability for the explosion would be tried separately from the issues of causation and damage to each individual plaintiff. *Id.* at 429. Even though Southwestern was the only defendant alleged to be responsible for the explosion, and the common-issues phase would establish whether it was legally responsible for the explosion and whether the released materials were capable of causing the alleged harm, the Texas Supreme Court concluded that common issues did not predominate because their resolution would not establish, among other things, the extent to which: (a) each class member was exposed to or harmed by the exposure, or (b) other factors also contributed to the alleged harm. *See id.* at 436–37. The Court thus concluded that, in light of the individualistic variables, such as class members' dosage, location, activity, age, and medical history, a class action proceeding could not efficiently allow Southwestern to challenge causation and damages for each individual claim. *Id.*[7]

### Satisfaction of a Rule 42(b) Condition

*Bernal* had not been decided when the order in this case was entered. Not surprisingly, therefore, other than stating that the certification was "as to liability issues only," the order does not specify which issues would be submitted to the jury in the class action phase and which would be submitted in the individual phase(s) or whether the respective phases would be decided by a single jury or multiple juries. Appellees envision that this case would be submitted in "two phases of causation" whereby the jury in the class action phase would determine whether each appellant caused or aggravated flooding conditions generally, *i.e.*, by causing more water to flow into Clear Creek, and then the jury(s) in the individual phase(s) would determine the comparative causation and damages for each claimant. More specifically, appellees contend that the predominant liability issues for the class jury would include: (1) whether this was a 25–year or 100–year rainfall event; and, if the former, (2) whether appellants' conduct caused it to be transformed from a 25–year to a 100–year flood level in the class area at the time. Appellees further assert that if the liability class jury finds that appellants' conduct caused such a transformation, the focus of the individual damage phase would then include: (1) whether appellees' property damage was the result of the elevated flood levels; and (2) each appellant's percentage of responsibility for causing the property damage.

However, as the latter of those last two items reflects, the allegedly elevated flood

---

7. Despite the individual issues recognized in *Bernal,* it is not apparent why judicial economy would not have been served by trying Southwestern's responsibility for causing the explosion and release of toxic materials as a common issue (apart from the issue of whether that event caused each plaintiff's injuries) rather than repeatedly litigating that issue in individual lawsuits. *See Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731–32 (Tex. 1984) (distinguishing between the two causal nexuses in a personal injury case: (1) that the defendant's conduct caused an event, and (2) that the event caused the plaintiff's injuries; and recognizing that the former is a component of liability which is admitted in a default judgment whereas the latter is a component of damages which is not so admitted but must be affirmatively supported by evidence). Nor is it apparent how trying Southwestern's responsibility for causing the explosion and toxic release as a common issue would have prejudiced Southwestern's opportunity to thereafter challenge the causation and damages for each claimant in individual determinations.

levels in this case are claimed to have been caused by multiple defendants doing different things at different locations along the channel and floodplain of Clear Creek. The evidence similarly suggests that various factors contributed to the flooding in varying degrees within each class area.[8] Therefore, under appellees' approach, any class action finding that any appellants were responsible for causing elevated flooding somewhere in a class area would not establish whether, or to what extent, any one or combination of them caused elevated flooding in any particular part of a class area, let alone as to any individual claimant.

■■■ Thus, to the extent the individual phase(s) is not tried to the same jury as the class action phase, it is not apparent how an individual claimant would be able to prove which appellant(s) caused the elevated flooding on his particular property without first re-introducing the evidence needed to show how each appellant contributed to the flooding conditions in the class area generally and that had previous-ly been introduced in the class action phase of the case. Under these circumstances, the evidence presented in this case does not demonstrate that issues common to the certified classes will be the object of most of the efforts of the litigants and the court (or that appellees' approach would otherwise promote judicial economy). *See Bernal,* 22 S.W.3d at 434.[9]

■■■ Similarly, because of the varying degree to which the current record indicates that various factors contributed to the flooding within each class area, it has not been shown that prosecution of separate actions would create a risk of inconsistent or varying adjudications for those areas which would establish incompatible standards of conduct for appellants. *See* Tex.R.Civ.P. 42(b)(1)(A). Because the current record does not therefore reflect that a condition of Rule 42(b) was satisfied with regard to the claims against appellants in the class areas certified, the trial court abused its discretion in certifying a class as to those claims and areas[10] based on

---

8. In this respect, the class areas certified in this case are, if anything, less susceptible to class treatment than those in *Bernal* where the damaging condition, *i.e.,* the explosion and resulting release of toxic smoke, was alleged to be caused by a single event and a single defendant, and the only issue that could not be decided in a class action was how that event affected each claimant, if at all.

9. It is arguable that class certification would be appropriate for each area in which a common combination of factors and appellants caused elevated flooding such that a single comparative causation question could be answered by a jury for the entire area. However, as noted above, *Bernal* leaves uncertain whether the variation in the pre-flood condition and other characteristics of each class member's property would still preclude satisfaction of the predominance requirement:

> We conclude that individual issues predominate over common ones in this class. The common-issues phase will establish wheth-

er Southwestern is legally responsible for the explosion and whether the released materials were capable of causing the harm some members of the class allege. The answers to these questions are necessary in considering Southwestern's liability, but they will not establish whether and to what extent each class member was exposed, whether that exposure was the proximate cause of harm to each class member, whether and to what extent other factors contributed to the alleged harm, and the damage amount that should compensate each class member's harm. As for these latter issues, highly individualistic variables including each class member's dosage, location, activity, age, medical history, sensitivity, and credibility will all be essential to establishing causation and damages.

22 S.W.3d at 436–37.

10. *See supra,* note 4.

this record.[11] Accordingly, the judgment of the trial court is reversed to that extent, and, because the *Bernal* opinion was not available to appellees or the trial court at the time the certification issue was tried or decided, the case is remanded to the trial court for further proceedings and without prejudice to further consideration of class certification.

---

11. Other decisions have similarly denied class certification of claims arising from floods. *See Cook v. Highland Water & Sewer Authority*, 108 Pa.Cmwlth. 222, 530 A.2d 499 (1987); *Saba v. Counties of Barnes, Etc.*, 307 N.W.2d 590 (N.D.1981) ("If the defendants were determined to be liable because they negligently caused an increase in the rain [by seeding clouds], the issue of whether or not that negligence was the proximate cause of the damage to each member of the class would remain to be determined.... Insofar as the issue of proximate cause would need to be determined on a member-by-member basis, ... the lawsuits would be individualized."); *Eaton v. Ventura Port Dist.*, 45 Cal.App.3d 862, 119 Cal.Rptr. 746 (Cal.Ct.App.1975).