**Katlin v. Tremoglie**

C.P. of Philadelphia County, no. 9706-2703.

*Alan M. Feldman,* for plaintiff.
*James C. Stroud,* for defendants Greenspring.
*Sheryl L. Auerbach,* for defendant Keystone Health Plan East Inc.

LEVIN, *J.,* June 29, 1999—Before this court are plaintiff's motion for class certification, defendants' memoranda of law in opposition, and all submissions thereto. For the reasons stated below, we grant certification, on an opt-in basis and for economic, nominal and punitive damages only, plaintiff's breach of contract, breach of confidentiality, invasion of privacy, fraud/negligent misrepresentation, and Pennsylvania's Unfair and Deceptive Practices and Consumer Protection Law claims. We deny certification to plaintiff's negligence and negligence per se claims and exclude personal injury/emotional distress damages from this suit.

## I. INTRODUCTION

Plaintiff Harold Katlin has filed this class action lawsuit on behalf of himself and all other persons who were treated by unlicensed physician David Tremoglie at the Bustleton Guidance Center. Plaintiff contends that defendants willfully, purposefully, and intentionally misrepresented that Tremoglie was licensed to practice medicine and failed to notify patients of Tremoglie's non-licensure. Based upon the alleged nondisclosure and

misrepresentation, plaintiff filed an eight-count complaint[1] against Tremoglie, corporate entities responsible for operating the Bustleton Guidance Center,[2] and his health insurer.[3]

Katlin alleges that "[c]ommencing in May of 1996 [he] began an intensive course of treatment and therapy with Tremoglie at Bustleton." (Pl.'s mem. at 5.) As part of Katlin's treatment, Tremoglie allegedly provided psychiatric counseling and prescribed controlled substances which Katlin filled and ingested. Plaintiff further contends that under Tremoglie's care, his condition "deteriorated and he became extremely depressed for which defendant Tremoglie suggested admission to a psychiatric hospital." (Fourth am. compl. at ¶17.)

As to all patients treated by Tremoglie, Katlin alleges that Tremoglie entered into confidential physician-patient relationships with them and examined their medical records. (Fourth am. compl. at ¶¶26, 27.) As a result of the alleged conduct of all defendants, plaintiff and members of the class allegedly sustained both economic and personal injury damages. The economic damages include expenses patients incurred for co-payments, premiums, and drugs Tremoglie prescribed. The personal injury damages some patients allegedly sustained as a

---

1. Count I, negligence against Tremoglie only. The remaining counts are against all defendants: Count II, negligence; Count III, breach of contract; Count IV, fraud/negligent misrepresentation; Count V, negligence per se; Count VI, Consumer Protection Law; Count VII, invasion of privacy; Count VIII, breach of confidentiality.

2. These entities are Behavioral Health Care Associates, Advantage Behavioral Systems Inc., PsychResources Associates Inc. and Greenspring Health Services Inc.

3. Keystone Health Plan East Inc.

result of disclosure of Tremoglie's non-licensure and improper psychiatric treatment are emotional distress and deteriorated psychiatric condition.

Katlin moves that "[t]his matter [be] hereby certified as a class action on the issues of (1) defendants' legal duties with respect to the causes of action alleged in plaintiff's fourth amended complaint, (2) defendants' breach thereof, (3) causation of economic harm, (4) causation of violations of the plaintiff class's privacy interests and right to confidentiality, and (5) punitive damages." (Pl.'s proposed class certification order.)

Defendants deny all substantive allegations of Katlin's complaint and argue that plaintiff has not satisfied the requirements for class certification as set forth in Pennsylvania Rules of Civil Procedure. Thus, defendants contend the litigation of these issues should have to proceed, if at all, on an individual basis.

The pleadings in this matter are closed. The court held argument on the merits of plaintiff's motion for class certification on January 15 and February 19, 1999. Accordingly, this court makes the following findings of fact.

## II. FINDINGS OF FACT

(1) Harold Katlin is a citizen of the Commonwealth of Pennsylvania and was treated by Tremoglie at the Bustleton Guidance Center.

(2) David Tremoglie is a citizen of the Commonwealth of Pennsylvania who, without a license, practiced as a psychiatrist at the Bustleton Guidance Center beginning in March of 1996 to October 29, 1996.

(3) Tremoglie has admitted that his medical license, Drug Enforcement Agency license and copy of professional liability insurance policy are fraudulent.

(4) Greenspring Health Services Inc. conducts business within the Commonwealth of Pennsylvania by providing mental health and substance abuse treatment at various centers located within Pennsylvania.

(5) Advantage Behavioral Systems Inc. is a wholly owned subsidiary of Greenspring Health Services Inc. that operated the Bustleton Guidance center before purchasing the assets of PsychResource Associates Inc. in January of 1996.

(6) PsychResources, operated under the name PsychResource Associates Inc. after Advantage purchased its assets.

(7) Bustleton Guidance Center is a fictitious name used to represent the treatment center Greenspring operates at Bustleton Avenue in Philadelphia.

(8) Behavioral Health Care Associates is a Pennsylvania corporation which entered into a contract with Tremoglie by which Tremoglie would provide psychiatric services at Greenspring.[4]

(9) Keystone Health Plan East Inc. is a health maintenance organization that provides health care benefits to its subscribers.

(10) Keystone had a contract with Greenspring which provided Greenspring would furnish mental health and substance abuse treatment to any Keystone member.

(11) Keystone provided health insurance for Katlin from April of 1996 until December of 1996.

(12) In October of 1996, Greenspring dismissed Tremoglie from his duties at the Bustleton.

---

4. Advantage, PsychResources, Bustleton, and Behavioral will be referred to as "Greenspring" or the "Greenspring defendants."

(13) In June 1997, Katlin filed this class action suit, asserting claims on behalf of a proposed class of individuals who had received behavioral health services from Tremoglie at Bustleton.

(14) After Katlin filed his lawsuit, Greenspring and Keystone sent a letter dated June 30, 1997 to Katlin and other subscribers who had been seen by Tremoglie which advised them that Tremoglie was not a licensed physician/psychiatrist.

(15) Defendants sent another letter dated November 13, 1997 to subscribers which purported to represent "a full refund for any co-pays or no-show fees paid by [subscribers] for services rendered by David Tremoglie. Also included is a refund for any treatment services for which [the subscriber] paid out-of-pocket if [the subscriber] had exhausted [his or her] annual outpatient benefits." (Greenspring's letter dated November 13, 1997.)

(16) Under the caption *In re Tremoglie* and master docket number 9811-2103, the Court of Common Pleas of Philadelphia County, pursuant to Pa.R.C.P. 213.1 (coordination of actions in different counties), ordered a coordination of individual actions that had been filed by 24 former Tremoglie patients.

(17) The case management coordination order established both master and separate docket and files, provided a means by which subsequent individual actions could be coordinated, formed an organization of plaintiff's and defendants' counsel, coordinated pleadings and other papers, and provided a mechanism for coordinating discovery. (Corp. df.'s exhibit 1 at 1-19.)

## III. DISCUSSION

Before analyzing Katlin's motion under the prerequisites for class certification, the court will explain how

the opinion is organized. The discussion begins with our analysis of whether to certify the issues Katlin presents in his motion for class certification. We follow that discussion with an analysis of plaintiff's claims under the prerequisites of class certification as outlined in Pa.R.C.P. 1702(1)-(5), Rule 1709(1)-(3) and Rule 1708(a)(1)-(7). The organization for that discussion will be as follows: Part A, numerosity; Part B, commonality; Part C, typicality; Part D, fair and adequate representation; Part E, fair and efficient method of adjudication. Under commonality and typicality, the court will combine and separate certain claims for analysis. Counts I, negligence (against Tremoglie only), II, negligence (corporate defendants) and V, negligence per se, will be combined and analyzed under both commonality and typicality. Count VI, breach of CPL, and Count IV, fraud/negligent misrepresentation will also be combined and analyzed under both commonality and typicality. Both Count III, breach of contract and plaintiff's request for punitive damages will be analyzed separately under both commonality and typicality. Under commonality, the court will analyze separately Count VII, invasion of privacy, and Count VIII, breach of confidentiality. However, under typicality, these two claims will be combined. Part III (F) explains our decision to establish an opt-in rather than opt-out procedure. Part IV is the court's conclusions of law. And finally, appended to the opinion is our order granting and denying class certification.

Before analyzing the prerequisites to class certification, the court must address the question of whether Pa.R.C.P. 1710(c) permits the court to certify certain elements of plaintiff's claims without considering whether each claim as a whole is suitable for certification.

The court decides that Rule 1710(c) does not permit the court to certify certain elements of plaintiff's claim without determining whether the claim as a whole is suitable for class resolution.

Plaintiff seeks that "[t]his matter . . . be certified as a class action on the issues of: (1) defendants' legal duties with respect to the causes of action alleged in plaintiff's fourth amended complaint, (2) defendants' breach thereof, (3) causation of economic harm, (4) causation of violations of the plaintiff class's privacy interests and right to confidentiality, and (5) punitive damages." (Pl.'s proposed class certification order.)

Plaintiff's proposed order conspicuously and creatively leaves out issues about whether defendants' alleged breach caused Tremoglie's patients to suffer emotional distress and to sustain personal injuries. Framing certification in this way, plaintiff argues, furthers two purposes. First, it enables Tremoglie's patients to seek redress for the harm allegedly caused by defendants without requiring that they put their entire mental and physical health history at issue. Such private inquiries are precluded by this class suit, plaintiff argues, because they are not needed to resolve the issues for which plaintiff seeks certification. Second, plaintiff's proposed class certification avoids overwhelming the class suit with individual issues by carving out proximate causation issues.

Plaintiff contends that the court can certify certain elements of each claim under Pa.R.C.P. 1710(c)(1), the Superior Court's decision in *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 501 A.2d 635 (1985) and the Delaware County Court of Common Pleas' decision in *Snead v. Community Dialysis Center Inc.,* J. no. 92-7044 (September 30, 1993 Harry Bradley). Rule

1710(c)(1) states that "the action may be maintained as a class action limited to particular issues or forms of relief." This provision, plaintiff argues, enables a court to certify certain elements of a claim without determining whether the claim as a whole is suitable for class certification. *Cambanis* purportedly supports plaintiff's position because the court there stated it was permissible for a court to certify all the elements of the claim related to liability and handle damages on an individual basis. Finally, plaintiff offers *Snead* for support because there, the court certified issues of duty and breach and excluded causation and damages.

Defendant responds that the claim in its entirety must meet the requirements of class certification and that plaintiff's motion for certification attempts to skirt the predominance requirement of Rule 1708(a)(1). Plaintiff counters that "[defendants'] suggested reading of Rule 1710(c)(1) would also render superfluous the language of Rule 1710(c), for if a court legitimately certifies a claim then why would it ever want to enter another order re-certifying some of the 'issues' which are part of that 'claim'?" (Pl.'s reply at 13.)

The court rejects plaintiff's attempt to limit class certification to certain issues and determines that it must decide whether each of plaintiff's claims in their entirety are suitable for class certification. If the court adopted plaintiff's approach, the court would effectively write the predominance requirement out of Rule 1708(a)(1). I believe that 1710(c)(1) does not permit plaintiff to sever issues until the common issues predominate over the individual issues. The District Court for the Eastern District of Pennsylvania reached a similar conclusion in *Arch*

*v. American Tobacco,* 175 F.R.D. 469 (E.D. Pa. 1997) where it stated:

"After the court determines that the (b)(3) [predominance requirement] has been satisfied as to the whole cause of action, then the court may use (c)(4) [the equivalent of (c)(1)] as a 'housekeeping rule . . . to sever common issues for trial.' *Id.* At this point in time plaintiffs have not established that their causes of action independently satisfy the predominance requirement. Plaintiffs cannot read the predominance requirement out of (b)(3) by using (c)(4) to sever issues until the common issues predominate over the individual issues." *Id.* at 496.[5]

Similarly, we agree with the Fifth Circuit's prediction in *Castano v. American Tobacco Co.,* 84 F.R.D. 734, 745 n.21 (5th Cir. 1996) that "[r]eading Rule 23(c)(4) [1710(c)(1)] as allowing a court to sever issues until the remaining common issues predominates over the individual issues would eviscerate the predominance requirement of Rule 23(b)(3) [same as Pa.R.C.P. 1708(a)(1)]; the result would be automatic certification in every case where there is a common issue, a result that could not have been intended."

We are not persuaded by the cases plaintiff cites. Unlike the plaintiff in *Cambanis,* plaintiff here seeks to bifurcate separate issues related to liability, not bifurcation of liability from damages, as in *Cambanis.* Plaintiff asks the court to separate certain liability issues from other liability issues. In *Cambanis,* the court held that

---

5. Federal precedent is instructive in construing Pennsylvania's class action rules particularly where the rules are similar. *McMonagle v. Allstate Insurance Co.,* 460 Pa. 159, 331 A.2d 467 (1975); *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 451 A.2d 451 (1982).

individual questions about damages do not preclude a class action and that "[a] trial limited to the issue of liability is an efficient method of deciding [defendant's] liability." *Id.* at 51, 501 A.2d at 640. We are also not persuaded by the decision in *Snead* because the court did not analyze whether Rule 1710(c)(1) permitted the court to separate duty and breach from causation and damages. The court did so without discussion. See *Snead,* no. 92-7044 at 9 (finding it premature to analyze the individual issues raised by the elements of causation and damages since plaintiffs sought certification on duty and breach only). Therefore, we agree with plaintiff that Rule 1710(c)(1) permits the court to certify certain issues or elements of a claim. But to certify certain issues or elements, the court must consider all the elements in the claim and determine whether common issues still predominate over the individual issues. Accordingly, we conclude that under Rule 1710(c)(1) the court must consider each claim and its constituent elements to determine whether it satisfies the prerequisites to class certification.

Having concluded that the issues presented for certification cannot be separated from the claims they relate to, the court will now determine whether plaintiff's suit, as defined by the eight counts in the fourth amended complaint, is properly certifiable as a class action.

The court's authority to certify class suits is limited by the Pennsylvania Rules of Civil Procedure: "[t]he hearing is confined to a consideration of the class action allegations and is not concerned with the merits of the controversy or with attacks on the other averments of the complaint. Its only purpose is to decide whether the action shall continue as a class action or as an action

with individual parties only." Pa. R.C.P. §1707 (explanatory note-1977). Thus, for the time being, we must refrain from ruling on plaintiff's ultimate right to recovery and on the merits of any defenses raised.[6]

Our decision at this stage is limited to whether the plaintiff[7] has satisfied the requirements described in Pennsylvania Rule of Civil Procedure 1702:

*"Rule 1702: Prerequisites to a class action*

"One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708."

In determining if these criteria are satisfied, the court is clearly vested with broad discretion. *Cambanis v. Na-*

---

6. Specifically, we note that the defense of failure to state a claim upon which relief can be granted is *not* waived if preserved until after certification. See Pa.R.C.P. 1705 (explanatory note-1977).

7. The burden of proving that class certification is appropriate clearly falls upon the party seeking certification. *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 449, 500 A.2d 1137, 1141 (1985); *Janicik v. Prudential Insurance Company of America,* 305 Pa. Super. 120, 128, 451 A.2d 451, 454 (1982).

*tionwide Insurance Co.,* 348 Pa. Super. 41, 51, 501 A.2d 635, 640 (1985) (court has authority to certify certain claims, issues or forms of relief and not others); *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 135, 451 A.2d 451, 457 (1982) (same). See Pa.R.C.P. 1710(c)(1); *Klemow v. Time Incorporated,* 466 Pa. 189, 197, 352 A.2d 12, 16 (1976); *Prime Meats Inc. v. Yochim,* 422 Pa. Super. 460, 468, 619 A.2d 769, 773 (1993).

However, we recognize that decisions in favor of maintaining a class action should be liberally made. *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 448, 500 A.2d 1137, 1141 (1985); *Bell v. Beneficial Consumer Discount Co.,* 241 Pa. Super. 192, 205, 360 A.2d 681, 688 (1976) "(class suits enable the assertion of many meritorious claims that might not otherwise be litigated)." Accord, *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454.

Given this context, the court will enumerate the factors it considered in ruling on class certification.

### A. *Numerosity*

To satisfy this criterion, the class must be both numerous and identifiable. A class is sufficiently numerous when "the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should [plaintiffs] sue individually." *Temple University v. PA Department of Public Welfare,* 30 Pa. Commw. 595, 603, 374 A.2d 991, 996 (1977) (123 plaintiffs sufficiently numerous); *ABC Sewer Cleaning Co. v. Bell of Pennsylvania,* 293 Pa. Super. 219, 228 n.6, 438 A.2d 616, 621 n.6 (1981) (250 plaintiffs sufficiently numerous); *Ablin Inc. v. Bell Telephone Co. of Pennsylvania,* 291 Pa. Super. 40, 50 n.5, 435 A.2d 208, 214 n.5

(1981) (204 plaintiffs sufficiently numerous). When a class is narrowly and precisely drawn, but there are still so many potential members that joinder is impractical or impossible, the class is sufficiently delineated to satisfy the numerosity requirement. *Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 408, 615 A.2d 428, 430 (1992), citing *Cribb v. United Health Clubs,* 336 Pa. Super. 479, 481, 485 A.2d 1182, 1184 (1984). A class is not sufficiently identifiable "where the class definition is so poorly established that the court [is unable to] discern who the potential class members are . . . ." *Weismer,* 419 Pa. Super. at 408, 615 A.2d at 430; *Dickler v. Shearson Lehman Hutton Inc.,* Phila. C.C.P. no. 9002-2653, opinion, April 17, 1997 (Levin, J.) (proposed class not identifiable because plaintiffs' inconsistent pleadings prevented court from identifying the class of potential plaintiffs).

Plaintiff has satisfied the numerosity requirement because defendants admit that Tremoglie saw approximately 550 patients at the Bustleton Guidance Center. (Df.'s (Greenspring's) mem. at 16 n.6.) Not only are the class members sufficiently numerous, but also identifiable from further discovery of defendants' records.

## B. *Commonality*[8]

For class certification, plaintiffs must also establish that their claim presents "questions of law or fact com-

---

8. For organization and not analysis, the court will consider Rule 1708(a)(1)'s requirement that common issues of law and fact must predominate over any question affecting individual members along with Rule 1702(2) commonality requirement Pa.R.C.P. 1708(a)(1). We recognize 1702(2) and 1708(a)(1) are separate requirements.

mon to the class." Pa.R.C.P. 1702(2). "The common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant would be proof as to all." *Allegheny County Housing Authority v. Berry,* 338 Pa. Super. 338, 342, 487 A.2d 995, 997 (1985); *Cook v. Highland Water and Sewer Authority,* 108 Pa Commw. 222, 231-32, 530 A.2d 499, 504 (1987).

While the existence of individual questions essential to a class member's recovery is not necessarily fatal to the class, there must be a "*predominance* of common issues, shared by all the class members, which can be justly resolved in a single proceeding." *Weismer,* 419 Pa. Super. at 408-409, 615 A.2d at 431; *D'Amelio,* 347 Pa. Super. at 451, 500 A.2d at 1142 and *Janicik,* 305 Pa. Super. at 133, 451 A.2d at 457. See Pa.R.C.P. §1708(a)(1).

### 1. Counts I & II, Negligence and Count V, Negligence Per Se

We deny certification of these claims because common issues of defendants' conduct do not predominate over the individual issues about possible superseding and intervening causes of each class member's noneconomic injuries. See *Weismer,* 419 Pa. Super. at 410, 615 A.2d at 431 (affirming trial court's denial of plaintiffs' negligence claim because superseding and intervening causes of each class member's personal injuries prevented liability from being decided on a class-wide basis); see also, *Hanson v. Federal Signal Corp.,* 451 Pa. Super. 260, 268, 679 A.2d 785, 789 (1996) (common issue of exposure did not predominate over individual issues of causation and type of injury); *Cook v. Highland Water and Sewer Authority,* 108 Pa. Commw. 222, 530 A.2d 499 (1987) (commonality not satisfied because of individual issues of proxi-

mate causation). Resolving plaintiff's negligence claims class-wide is not feasible given the number of individual inquiries required. Inquiries into the patients' physical health and psychiatric history, and Tremoglie's interaction with each patient are necessary to resolve these claims. Accordingly, these claims raise too many individual issues to be resolved fairly and efficiently in a class suit.

## 2. Count III, Breach of Contract

The court finds that this claim satisfies the commonality requirement because at the heart of this claim is the common allegation that defendants breached their contract with Tremoglie's patients by failing to provide them with a licensed psychiatrist. As stated by defendants, the elements of a claim for breach of contract are:

"(1) The existence of a valid and binding contract to which the defendants were parties;

"(2) The contract's essential terms;

"(3) That [the party seeking enforcement] complied with the contract's terms;

"(4) That the defendants beached a duty imposed by the contract; and

"(5) Damages resulting from the breach." (Df.'s (Keystone) mem. in opp'n at 69) (citing *Gundlach v. Reinstein,* 924 F. Supp. 684, 688 (E.D. Pa. 1996).

Defendants contend the second element of a contract claim does not present common issues because the class had different plans and different health insurance companies.[9] Although the plans may be different in some

9. The issue of Katlin's standing to represent a class of non-Keystone subscribers is analyzed in Part III D(4) of the opinion under the heading "other matters."

respects, the court is confident they all raise a similar issue: whether they required defendant to furnish subscribers with a licensed psychiatrist. Furthermore, resolving this issue would require individualized scrutiny into each contract—not each plaintiff. Thus, the individual inquiries needed to resolve this issue are not the type that usually prevent common issues from predominating. See Part III B(1) at 13-14.

Defendants also argue that the contract claim's fifth element (damages) raises individual issues because the court must decide, before determining liability, whether Tremoglie's treatment of each class member breached the appropriate standard of care. That issue is relevant to the class' noneconomic injuries. And since personal injury damages are not included in this class suit, that issue is irrelevant. Finally, the Department of Health's directive that defendants reimburse patients for costs they incurred as a result of their visits with Tremoglie raises individual issues about each class member's damages, which does not normally preclude certification. *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 51, 501 A.2d 635, 641 (1985); *Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. at 409-410, 615 A.2d at 431; *Janicik,* 305 Pa. Super. at 133, 451 A.2d at 457. Defendants' other arguments against certifying plaintiff's contract claim relate to the merits of the various defenses they intend to raise against the class.[10] We believe these defenses can be applied to all the class members and that this argument really addresses the merit of plaintiff's

---

10. Defendants argue that the contract claims of many putative class members are preempted by the Employment Retirement Income Security Act of 1974 and the Federal Employee Health Benefits Act.

breach of contract claim rather than the efficiency and manageability of litigating that claim. As a result, this court is convinced that plaintiff's contract claim raises questions of law and fact common to the class.

### 3. Count IV, Fraud/Negligent Misrepresentation and Count VI, CPL

Plaintiff argues that commonality exists among these claims because they are based on a material nondisclosure, which vitiates the need for individual inquiries into whether each patient relied on the defendants' representations. The proper focus for the court, plaintiff insists, should be on the materiality of the nondisclosure—not reliance—because the putative class members cannot rely on facts which have been concealed. Plaintiff additionally argues that because a confidential relationship existed between the patients, Tremoglie, Greenspring and Keystone, the burden to prove the absence of fraud shifts from plaintiff to defendants.

Defendants respond with two familiar principles: (1) that fraud claims are typically not certified because they hinge on individual issues of whether each class member relied on defendants' representations; and (2) that the need for plaintiff in his CPL claim to prove a causal connection between defendants' deception and his or her loss renders the CPL claim inappropriate for class resolution.

The court concludes that these claims[11] satisfy the commonality element because each Tremoglie patient need

---

11. The court treats plaintiff's fraud and CPL claims together because reliance is not only an element of fraud/misrepresentation claims, but also CPL claims. See *Basile v. H.R. Block,* 729 A.2d at 584 (We agree with Judge Herron's conclusion that the UTPCPL requires a

not demonstrate reliance, because of the nature of his or her relationship with Tremoglie, Greenspring and Keystone. In *Basile v. H&R Block,* 729 A.2d 574, 584 (Pa. Super. 1999), the Superior Court reversed the trial court's finding that individual issues of reliance precluded certification of plaintiff's CPL claim.[12] *Id.* at 584. The court concluded that "[b]ecause Block, as plaintiffs' agent, was bound to conform to the duty of fiduciary, reliance by the class plaintiffs is implicit and is established by operation of law as to all matters within the scope of the agency." *Id.* We recognize that the plaintiffs in *Basile*— but not the plaintiff here—alleged that defendants were acting as their agent. However, I find no compelling reason not to extend *Basile's* logic to a case involving allegations of a breach of a confidential relationship. Both confidential relationships and agency relationships are types of fiduciary relationships. See Black's Law Dictionary at 270 (defining confidential relation as a fiduciary relationship). Therefore, the decision in *Basile* is not based on merely the form (*i.e.* agency) the parties used to establish their relationship. *Basile* is based on a general recognition that when a special relationship exists between the parties, certain disclosure obligations are implicit and, thus, reliance is presumed.

Here, we presume, for certification purposes, that a confidential relationship existed between putative class

showing of detrimental reliance in private actions based on all provisions of the statute.).

12. In *Basile,* the plaintiff alleged that tax preparer, H&R Block "was their agent and/or fiduciary and owed them a corresponding duty to disclose that their purported rapid refunds were, in fact, short term high interest refund anticipation loans in which Block shared an interest with defendant Mellon Bank N.A." *Id.* at 574.

members and defendants, and that defendants breached that duty by not disclosing Tremoglie's license status before patients visited with Tremoglie or immediately after defendants dismissed him in October of 1996. See *Basile,* 729 A.2d at 587-88 (finding it "no error" for Judge Avellino, for purposes of class certification, to presume fiduciary relationship existed between parties). Because of the nature of the relationship between the patients, Tremoglie, Greenspring, and Keystone, individual issues of reliance are not present here. The court is not troubled by defendants' second argument that plaintiff and each member of the class must prove a causal connection between the deception and his or her ascertainable loss because all patients incurred certain expenses as a result of their treatment with Tremoglie. Accordingly, we find that plaintiff's fraud-based claims satisfy the commonality requirement.

### 4. Count VII, Invasion of Privacy (Intrusion Upon Seclusion)[13]

Defendants argue that plaintiff's privacy claim cannot be resolved class-wide because the elements of the claim require a myriad of individual inquiries. Proving substantiality class-wide is not possible, defendants claim, because it depends upon the nature and extent of the private information that each patient disclosed to Tremoglie. Disclosure of a patient's medical records—without regard to the record's content—is insufficient to

---

13. The elements of an intrusion upon seclusion claim are an: (1) intentional intrusion; (2) upon the solitude or seclusion of another or his private affairs or concerns and that the intrusion be; (3) substantial; and (4) highly offensive to a reasonable person, *Chicarella v. Passant,* 343 Pa. Super. 330, 339, 494 A.2d 1109, 1114 (1985).

prove substantiality, defendants maintain. In addition, defendants argue that the issue of whether the intrusion is highly offensive to a reasonable person is unsuited for class resolution because the court must consider whether each class member would regard the intrusion as "highly offensive." Finally, defendants maintain that proving damages requires an individual inquiry into the impact the disclosure had upon the patient.

The court determines that commonality exists among proposed class members' privacy claims because the claims of each potential class member all relate to defendants' disclosure of patients' sensitive mental health records to an unlicensed physician. The court could determine—without reference to the contents of the records—that defendants substantially intruded upon and acted highly offensive towards the putative class' private affairs by disclosing, to someone who should not have been authorized to see them, the physical and mental health records of patients seeking psychiatric treatment. Defendants insist that *Chicarella v. Passant,* 343 Pa. Super. 330, 494 A.2d 1109 (1985) does not establish an objective standard that can be applied class-wide. However, that argument ignores the Superior Court's analysis in *Chicarella.* The court in *Chicarella* examined the contents of the medical records and determined that "[t]he brief descriptions of appellant's medical treatment cannot be deemed a substantial intrusion[,] [or] . . . the sort which would 'cause mental suffering, shame or humiliation to a person of ordinary sensibilities.' " *Id.* at 339, 494 A.2d at 1114. More importantly, the court stated that "[c]learly the conduct of [defendants] . . . falls short of this standard." *Id.* at 340, 494 A.2d at 1114. Here, the court could engage in the same analysis as *Chicarella*

but reach an opposite conclusion. That is, the unauthorized disclosure of the mental and physical health records of patients seeking counseling at a mental health, drug and alcohol treatment center *meets* the "substantial" and "highly offensive" standard. That the court in *Chicarella* examined the content of the records does not change our decision. Instead of examining the contents of the records, the court believes it could determine that unauthorized disclosure of psychiatric records (irrespective of their content) meets the applicable standard.

Similarly, the court concludes that the damages allegedly caused by defendants' breach of patients' privacy does not require intensive individual inquiries because, under plaintiff's privacy and confidentiality claims, the court will limit the class' recovery to nominal damages. Limiting plaintiff's recovery to nominal damages obviates the need for individual inquiries into the non-economic harm caused by defendants' alleged privacy invasion. In the recent decision of *Wecht v. PG Publishing Co.,* 725 A.2d 788 (Pa. Super. 1999), the Superior Court held that a plaintiff in a false light/invasion of privacy case may recover nominal damages, and, thus, need not put on expert testimony about whether the harm is of the kind that normally results from the invasion of privacy. *Id.* Because this suit is limited to economic and nominal damages, the court will not be required to make individual inquiries into the particular harm suffered by each plaintiff as a result of defendants' privacy invasion. The court agrees with defendants that if it did not limit plaintiff's privacy claim to one for nominal damages, it would need to conduct all the individual inquiries identified by defendants, for they are needed to determine the cause and extent of each patient's personal injuries.

To award nominal damages, however, the court is not required to conduct such intensive and exhaustive inquiries because under their privacy and confidentiality claims, the class will not be compensated for pecuniary loss or physical harm. Instead, they will be compensated for an invasion of their rights. See *Wecht,* 725 A.2d at 792 (observing that plaintiffs in an invasion of privacy case need not suffer either pecuniary loss or physical harm to be awarded damages); see also, Black's Law Dictionary (stating that nominal damages are awarded when, among other reasons, the law recognizes a technical invasion of plaintiff's rights or a breach of defendant's duty). Having winnowed Katlin's privacy claim to one for nominal damages, and having determined that defendants' conduct is judged by an objective standard, the court is convinced that plaintiff's privacy claim does not raise an unmanageable amount of individual issues.

### 5. Count VIII, Breach of Confidentiality[14]

Similar to their argument against certification of plaintiff's privacy claim, defendants challenge plaintiff's confidentiality claim by asserting that it raises too many individual issues to be fairly and efficiently resolved in

---

14. Defendants argue that Pennsylvania does not recognize a claim for breach of confidentiality. Not only is this a merits argument, but also a defense that would apply to the entire class. For certification purposes, the court will presume Pennsylvania recognizes such a claim, and the elements of the claim are as defendant outlined them: (1) that a psychiatrist-patient relationship existed with defendants; (2) that confidences were entrusted to defendants; and (3) that defendants breached this confidentiality by revealing these confidences. (Df. Keystone opp'n. mem. at 61) (citing *Lujan v. Mansmann,* 956 F. Supp. 1218 (E.D. Pa. 1997)).

a class suit. Specifically, defendants argue that under the second element of the confidentiality claim, the court would need to inquire into whether each individual class member entrusted confidences to Tremoglie. Such an inquiry, defendants insist, involves learning the content of the statements, their subject matter, the topic of the confidences revealed, their timing, and to whom the statements were made. Similarly, defendants argue that individual inquiries are required to prove the confidentiality claim's third element, because each member of the putative class must prove that his or her confidences were revealed to a third person.

As it did in plaintiff's privacy claim, the court concludes that commonality exists among each class member's breach of confidentiality claim because each claim relates to defendants' unauthorized disclosure of Tremoglie patients' physical and mental health records. The court does not believe that this claim is fraught with individual issues because defendants' course of conduct is the same for each class member. The alleged breach of confidentiality occurred when defendants allegedly allowed an unauthorized person to review each class member's physical and mental health records. The medical records themselves, irrespective of their content, are the "confidences" entrusted to Tremoglie and the corporate defendants. This alone may be sufficient to establish the second element of the confidentiality claim. As to the third element, Tremoglie has admitted examining and reviewing the medical records of every patient he treated at Bustleton. (Tremoglie's reply to Pl.'s second request for admissions at ¶1); (Pl.'s exhibit L). Therefore, the corporate defendants allegedly revealed patient confidences by permitting an unlicensed physician—and

hence unauthorized third person—to review the medical records entrusted to them by every class member. The issue of whether Tremoglie's admission binds the corporate defendants under an agency theory is both a merits argument, a defense applicable class-wide. Because we conclude that the court can resolve plaintiff's confidentiality claim without the individual inquiries envisioned by the defendants, the court is satisfied that plaintiff's confidentiality claim meets the commonality criterion.

## 6. Punitive Damages

Defendants argue that plaintiff's request for punitive damages does not raise common issues of law and fact because the court must make individual inquiries into (1) defendants' conduct toward each Tremoglie patient and (2) the nature and extent of the harm caused by defendants' conduct.[15] Defendants emphasize that the court must consider the variations among class members in the number of visits with Tremoglie, the medications prescribed to them and the nature and extent of intimate discussions they had with Tremoglie. Such a myriad of individual inquiries are required, defendants argue, that

---

15. Defendants additionally argue that punitive damages cannot be awarded because the award must be predicated upon specific claims. Because the plaintiff presented the class suit as "issue certification," defendants argue that there are no claims upon which to base a punitive damages award. However, the court rejected plaintiff's attempt at issue certification and required that each count in the fourth amended complaint be considered for certification. Thus, there are now claims upon which to base a punitive damage award because the court has certified plaintiff's fraud/negligent misrepresentation, CPL, and invasion of privacy, and breaches of confidentiality and contract claims.

the punitive damage issue is unsuited for class-wide resolution.

Plaintiff responds that the inquiries required to resolve the punitive damage issue are not as individualized as defendants contend. "The character of the acts of the defendants, the nature and extent of the harm (*i.e.* recognized economic harm and admitted privacy and confidentiality violations) and the wealth of the defendants are all matters that may be decided at a single class action trial, since the supporting evidence is the same for each class member . . . [.] [T]he number of visits to Tremoglie by different patients is a matter of record. Certainly, no individual trials are necessary to establish these facts; instead, document review and questioning of Tremoglie should suffice. (Pl.'s reply at 21.) Plaintiff additionally argues that punitive damages may be assessed based upon "Tremoglie's admitted intentional review of private and confidential medical records, and that no class member need be questioned for such an award." *(Id.)*

We find that plaintiff's request for punitive damages is premised upon a common course of conduct by defendants and therefore the commonality requirement is satisfied. The three factors to be considered in awarding punitive damages are: (1) the character of the act; (2) nature and extent of the harm and (3) the wealth of defendant. *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 102, 555 A.2d 800, 803 (1989). Having narrowed the recovery in this suit to economic and nominal damages, the court believes that each element may be proven class-wide.[16] First, the character of defendants' act is

---

16. A punitive damage award can be predicated upon a nominal damage award. See Restatement (Second) of Torts §908, comment c;

common to all plaintiffs. The corporate defendants allegedly failed to insure that patients at the Bustleton Guidance Center were treated by a licensed psychiatrist, and failed to notify the patients until eight months after they knew about Tremoglie non-licensure. Based upon these common allegations, the harm done to Tremoglie patients is the same; all had their physical and mental health records disclosed to someone who should not have been authorized to see them and all were not notified by defendants until eight months after Tremoglie's true license status was known. Finally, the wealth of the defendants is a common question. Narrowed to claims for economic and nominal damages, plaintiff's request for punitive damages raises common issues of law and fact.

## C. *Typicality*

Plaintiffs must also demonstrate that their "claims or defenses . . . are typical of the claims or defenses of the class." Pa.R.C.P. §1702(3). This factor requires that "the class representative's overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that her pursuit of her own interests will advance those of the proposed class members." *D'Amelio,* 347 Pa. Super. at 458, 500 A.2d at 1146; *Janicik,* 305 Pa. Super. at 134, 451 A.2d at 457; *Ablin,* 291 Pa. Super. at 47, 435 A.2d at 212. See also, I Newberg on Class Actions §1115a.[17] Typicality is not established

*Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 103-104, 555 A.2d 800, 803 (observing that Pennsylvania had adopted section 908(2) and rejecting defendant's argument that punitive damage award must be proportional to plaintiff's compensatory damages).

17. "Self-interest, the motivating force that sparks the adversary system, also sustains the doctrine of class actions. We must trust man

if a multitude of factors affected proposed class members. *Cook v. Highland Water and Sewer Authority,* 108 Pa. Commw. 222, 235, 530 A.2d 499, 505 (1987). In addition, "[f]ailure to find commonality . . . necessitates a conclusion that the typicality requirement of Rule 1702(3) has likewise not been met." *Hayes v. Motorists Mutual Insurance Co.,* 370 Pa. Super. 602, 610, 537 A.2d 330, 334 (1987).

### 1. Counts I & II, Negligence and Count V, Negligence Per Se

The court concluded, under commonality, that these claims raise issues of proximate causation because they are personal injury claims seeking redress for alleged emotional distress and personal injury. No class member—including Katlin—is typical of other class members on this issue because Tremoglie gave different treatment, prescribed different medicines, and saw the patients a different number of times. The factual dissimilarities between Katlin and putative class members preclude this court from finding that plaintiff's negligence claims are typical of and necessary for the protection of absent class members.

### 2. Breach of Contract

Having dismissed defendants' earlier arguments that individualized factors such as the standard of care and the variety of health insurance plans prevent common

---

to help his fellow man if by doing so he helps himself—particularly if *only* by helping others will he be able to protect and promote his own interests. . . . Our system of justice tolerates and at times favors litigation through champions who stand or fall with the whole group." (emphasis in original)

issues from predominating, the court finds that plaintiff's contract claim is typical of other absent class members' claims. Like most patients seen by Tremoglie, Katlin claims that Greenspring and Keystone contracted to provide him with a psychiatrist licensed to practice medicine in Pennsylvania. The defendants allegedly breached this agreement by failing to provide Katlin and other members of the class with someone authorized to practice medicine. Katlin, like other members, did not get what he contracted for: a licensed psychiatrist. Accordingly, this court is convinced that plaintiff's contract claim is typical of those belonging to, and necessary for the protection of, absent class members of the proposed class.

### 3. Count IV, Fraud/Misrepresentation and Count VI, CPL

We find that Katlin's fraud claims are typical of other class members' claims. Because defendants allegedly misrepresented Tremoglie's license status, Katlin—like all other class members—treated with Tremoglie and incurred expenses as a result. Accordingly, we find the typicality requirement satisfied.

### 4. Count VII, Privacy and Count VIII, Confidentiality

Having determined that the many individual inquiries defendants identified are not necessary to resolve Katlin's privacy and confidentiality claims, the court finds that Katlin's privacy and confidentiality claims are typical of other class members' claims. The class' privacy and confidentiality claims coalesce around a common allegation: all allegedly had their physical and mental health records disclosed to someone who should not have been authorized to see them. Because Tremoglie admitted to review-

ing all of his patients' medical records, Katlin's claim for privacy and confidentiality is typical of those belonging to absent class members.[18]

### 5. Punitive Damages

Likewise, Katlin's request for punitive damages is typical of other class members'. Katlin treated with Tremoglie, and was not notified by defendants about Tremoglie's non-licensure until eight months after defendants dismissed Tremoglie. Therefore, his claim is typical of those belonging to absent class members.

### D. *Adequacy of Representation*

For the class to be certified, this court must also conclude that the plaintiff "will fairly and adequately assert and protect the interests of the class." Pa.R.C.P. 1702(4). Adequate representation is evaluated under considerations set forth in Pennsylvania Rule of Civil Procedure 1709, which provides:

*"Rule 1709: Criteria for certification. Determination of fair and adequate representation*

"In determining whether the representative parties will fairly and adequately represent the interests of the class, the court shall consider among other matters

"(1) whether the attorney for the representative parties will adequately represent the interests of the class,

---

18. We reject defendants' argument that the statute of limitations renders Katlin's claim atypical. This is a merits issue and the court previously addressed this issue when it granted Katlin leave to file a third amended complaint adding the privacy and confidentiality claims. *Katlin v. Tremoglie,* no. 9706-2703 order of April 17, 1998.

"(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

"(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed."

Rule 1709 is not the place to revisit issues and rehash arguments raised during the discussion of Rule 1702's commonality and typicality requirements. Instead, "the three criteria . . . require the lower court to consider evidence and facts *distinct from* those necessary in its determination regarding the requisites of commonality and typicality." See *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 461, 500 A.2d 1137, 1147 (1985). (emphasis added)[19] Accordingly, the court will only address arguments that are distinct from those made under typicality and commonality.[20]

---

19. Examples of distinct issues and facts that the court should address under this provision are: the adequacy of plaintiffs' counsel's representation during the litigation, *Klusman v. Bucks County Court of Common Pleas,* 128 Pa. Commw. 616, 564 A.2d 526 (1989), *aff'd,* 524 Pa. 593, 574 A.2d 604 (1990) (finding as relevant under 1709 that counsel failed to move promptly for class certification, adhere to court orders, follow court procedure by filing summary judgment before the court had ruled on certification and candidly advise court of class representative's death); or plaintiff's counsel's dual role as class representative and class counsel. *Murphy v. Harleysville Mutual Insurance Co.,* 282 Pa. Super. 244, 422 A.2d 1097 (1980), *cert. denied,* 454 U.S. 896.

20. Under Rule 1709, defendants reiterate that Katlin is an inadequate representative because his claims are atypical and he has abandoned the class' possible personal injury claims in favor of issue certification. (Df.'s (Keystone) opp'n mem. at 73-76.)

## 1. Adequacy of Attorney

In response to the first factor, generally, "until the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458, citing *Dolgow v. Anderson,* 43 F.R.D. 472, 496 (E.D.N.Y. 1968). Because defendants have not raised this issue, the court assumes that plaintiff and members of the class are adequately represented.

## 2. Conflict of Interest

With regard to the second factor, "[C]ourts have generally presumed that no conflict of interest exists unless otherwise demonstrated, and have relied upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Janicik,* 305 Pa. Super. at 136-37, 451 A.2d at 459, citing *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). When there is no allegation of impropriety between plaintiff and his counsel, a finding of conflict that would prevent certification is inappropriate. See *Murphy v. Harleysville Mutual Insurance Co.,* 282 Pa. Super. 244, 422 A.2d 1097 (1980); *Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (3d Cir. 1976).

Defendants argue that a conflict exists between members of the class and patients who have chosen to sue individually in the coordinated management program. The purported conflict arises because Mark Tanner, a partner at class plaintiff's counsel's firm, is on the plaintiff's steering committee for the coordinated program. Defendants contend a conflict exists because

"Katlin and individual plaintiffs represented by the law firm could find themselves fighting each other and the class members for their shares of defendants' assets." (Df.'s Greenspring mem. in opp'n at 70.)

The court finds, at this time, that no conflict of interest arises from the same law firm representing both class plaintiffs and plaintiffs involved in the coordinated *In re Tremoglie* program. Defendants did not cite any authority for the proposition that an unacceptable conflict of interest arises if a law firm represents both class and individual plaintiffs. For the contrary proposition, however, plaintiff, cited to *In re Asbestos School Litigation,* 1986 WL 13882 (E.D. Pa. 1986). The court in *In re Asbestos School Litigation* permitted counsel for the class to represent both class members and plaintiffs who have opted out of the class. The court permitted counsel to represent both class and opt-out plaintiffs because a limited fund for payment of damages had not been established. *Id.* If it was apparent that a limited fund existed, the court observed that it might find a conflict of interest. *Id.*

Here, we find no conflict of interest exists because individuals in the *In re Tremoglie* program are similar to the opt-out plaintiffs in *In re Asbestos School Litigation,* and no evidence has been presented that a limited fund exists. Although we recognize that up to now there has been no class suit for Tremoglie patients to opt out of, plaintiffs in the *In re Tremoglie* program have effectively opted out of this class suit because they cannot both join this class suit and sue individually in the coordinated program. Plaintiffs who do so have impermissibly split their cause of action. See Part III F. However, we believe that the opt-out status of plaintiffs in the coordinated

program could change if, after receiving notice of this class suit, they decide to discontinue their individual suits and opt in to this class action. Therefore, we will—albeit prematurely—refer to plaintiffs in the coordinated program as opt-out plaintiffs. Based on that characterization, we will hew to the principal announced in *In re Asbestos School Litigation.* Because defendants have offered no evidence that a limited fund for damages exists, we find that class counsel's dual representation of the class and individual plaintiffs in the coordinated program does not raise an impermissible conflict of interest.

### 3. Adequate Financial Resources

Finally, as to the adequacy of plaintiff's ability to fund the litigation, an affidavit of counsel that it will advance the necessary costs is all that is required. *Janicik,* 305 Pa. Super. at 137-38, 451 A.2d at 459-60; *Haft v. U.S. Steel Corp.,* 305 Pa. Super. 109, 116, 451 A.2d 445, 448 (1982). Advancing costs are consistent with the Rules of Professional Conduct 1.8(e)(1) which "permit[] a lawyer to advance court costs and the expenses of litigation, the repayment of which can be contingent on the outcome of the matter." See *Wagner v. Anzon Inc.,* Phila. C.C.P. June term, no. 8706-4420, July 31, 1990 opinion of J. Prattis. Defendants have not raised this issue in their briefs or at oral argument, and we are confident that plaintiff has secured adequate financial resources to fund this litigation.

### 4. Other Matters

Among the "other matters" the defendants ask this court to consider are: (1) whether Katlin is inadequate

because he lacks standing to assert claims on behalf of putative class members who were or are not Keystone subscribers; (2) whether plaintiff's counsel are attempting to use class notice to solicit clients for individual actions against defendants; and (3) whether class notice is appropriate in light of the parties' and their respective experts' concern for the emotional health of Tremoglie's patients.

As to the first issue, we agree with Keystone that Katlin only has standing to represent class members who are former Tremoglie patients and have their health insurance with Keystone. However, we will not require plaintiff to add additional class representatives to represent non-Keystone subscribers until the period for opting in to the class suit has passed. Once the period for opting in has passed, the court will know who each member of the class is and what health insurer he or she subscribes to. At that point, the court will order class counsel to choose among the persons who opt in, separate class representatives for class members who are not Keystone subscribers. For example, if several of the Tremoglie patients who opt in are QualMed subscribers, then the court will order class counsel to choose among those persons a class representative to serve as representative for all QualMed subscribers. Such an order is authorized by Pa.R.C.P. §1713(a)(5) because it insures adequate representation of the class. See Goodrich-Amram §1713(a)(5) at 137 ("Under Rule 1713(a)(5) a court may . . . require joinder of co-representatives or co-counsel or enter any other appropriate order."). Therefore, under the court's authority to control the conduct of the action to insure adequate representation, we are confident that Katlin can adequately represent the class.

As to the second and third matters raised by defendants, we again cite to the court's authority under Rule 1713 to control the conduct of the action to insure that the class is adequately protected. In addition, the court has the authority under Rule 1712 to insure that class notice properly advises class members of their rights. Both Rules 1712 and 1713 enable the court to protect the members of the class and should assuage defendants' concerns about the class' representation.

Having considered the Rule 1709 factors and the issues raised at our certification hearing, this court finds that the class will be fairly and adequately represented.

### E. *Fair and Efficient Method of Adjudication*

Finally, the court must consider whether allowing the plaintiff to proceed with adjudication of this suit as a class action would be both fair and efficient. The factors to be evaluated are set forth in Pennsylvania Rule of Civil Procedure 1708 as follows:

"*Rule 1708: Criteria for certification. Determination of class action as fair and efficient method of adjudication*

"In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below].

"(a) Where monetary recovery alone is sought, the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions; [and]

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action."

"In determining fairness and efficiency, the court must balance the interest of the litigants, both present and absent, and of the court system." *Janicik,* 305 Pa. Super. at 141, 451 A.2d at 461. "[C]ourts should strike [this] balance mindful that the class action is inherently a 'procedural device designed to promote efficiency and fairness in handling large numbers of similar claims.' " *Janicik,* 305 Pa. Super. at 141, 451 A.2d at 461, citing *Lilian v.*

*Commonwealth,* 467 Pa. 15, 21, 354 A.2d 250, 253 (1976).

### 1. & 2. Predominance of Common Issues and Manageability

The thrust of defendants' argument under this provision is that it would be unfair and inefficient to certify Katlin's claims as a class action because his claims do not satisfy the commonality and typicality requirements due to the individual issues involved. The court addressed and diffused these concerns in our analysis of typicality and commonality. We stand firmly by our decision that the privacy, confidentiality, fraud/negligent misrepresentation, contract, and CPL claims raised here share sufficient common issues to allow Katlin to proceed with these claims for economic, nominal and punitive damages on behalf of a class, but his negligence claims do not. Accordingly, in this class suit in which noneconomic damages are excluded, common issues of defendants' conduct predominate over the individual issues of the cause, nature, and extent of each class member's damages. Under Rule 1708(1) and (2), we conclude that this class action is a fair method of adjudicating the controversy.

### 3. Risk of Inconsistent Adjudications

Because "[f]inding such risks is not essential to certifying the class, . . ." the court will not consider defendants' argument that there is no real risk of inconsistent adjudications in the absence of class certification. *Janicik,* 305 Pa. Super. at 143, 451 A.2d at 464; *Cambanis,* 348 Pa. Super. at 53, 501 A.2d at 641 (quoting *Janicik*).

## 4. Extent of Other Litigation

Defendants argue that the establishment of the *In re Tremoglie* coordinated program shows that individual actions more fairly and efficiently dispose of the controversy than a class action would.[21] We disagree because an opt-in class action, limited to economic, nominal, and punitive damages, enables Tremoglie patients to obtain recovery for harm done to their economic and privacy interests without subjecting their entire physical and mental health history to rigorous scrutiny. This option is not available to plaintiffs who have filed individual actions for emotional distress and other personal injury damages. Both plaintiff and defendants focused on the emotional impact that litigation would have on the Tremoglie patients. (See Pl.'s exhibit S report of Harry Doyle M.D. at 1) ("It is also my opinion that truthful and accurate notice to all Tremoglie patients of their medical and legal rights if not only appropriate but necessary to minimize additional damage to the innocent victims of this deception"); (See Dfs.' exhibit 32, report of Thomas Gutheil M.D. at 6) ("Group notifications of legal rights as Dr. Doyle proposes for that matter will substantially increase the risk of harm or deleterious effects on patients whose main concern is the care they receive."). Although the parties disagree on the litigation's impact, they agree that the court must be concerned about the emotional health of Tremoglie's patients. Therefore, the court must delicately balance the need to protect

---

21. Defendants state and plaintiff concedes that at least 24 Tremoglie patients have filed individual suits. (Df.'s (Greenspring) opp'n mem. at 79); (Pl.'s reply mem. at 30).

Tremoglie's patients' emotional health with the need to provide them with a forum to vindicate their legal rights. The court believes it has struck the appropriate balance by providing a forum for Tremoglie's patients to obtain recovery for the harm done to them without rigorous and—their mental and physical health history.[22] Accordingly, we find that this class action is fair and efficient despite the extent of other litigation.

### 5. Appropriate Forum

Keystone challenges the form of—not the forum for—Katlin's claims. (Keystone opp'n mem. at 81.) ("A class action is not the appropriate forum.") (capitalization and bold emphasis omitted) Defendants' argument aside, we find that Philadelphia County is the appropriate forum for litigating the claims of Tremoglie's patients.

### 6. Insufficient Amounts To Support Separate Claims

Defendants argue that the filing of separate lawsuits by 24 former Tremoglie patients shows that the claims are sufficient to support separate actions. We agree that patients who had substantial interactions with Tremoglie may have significant claims for damages. To these plaintiffs, it is likely that the benefit of getting a substantial damage award for personal injuries is worth the risk of, and likely detriment caused by, exposing their mental and physical health history to rigorous scrutiny. By con-

---

22. The briefs submitted thus far show that the court's fear is not unfounded. Defendant Greenspring devoted 13 pages of its brief outlining the physical and mental health history of some of Tremoglie's patients. (See Df.'s (Greenspring) mem. in opp'n at 22-35.)

trast, patients who briefly and infrequently interacted with Tremoglie probably do not have sufficient claims to pursue individual actions. These patients, however, still have claims for economic, nominal, and punitive damages. Accordingly, in view of the complexity of the issues and expected expenses of litigation here, it is unlikely that individual class members who do not seek personal injury damages could support separate actions.

### 7. Insufficient Recovery To Justify Class Action

Because this class suit is for economic, nominal, and punitive damages and extensive testimony about the cause of Tremoglie patients' emotional damages will not be involved, the amount which each individual class member may recover is sufficiently large in relation to the expenses and effort of administering the class action to justify certification.

### 8. Rule 1708(a): Other Matters

Finally, Katlin has shown sufficient evidence of honesty, willingness to pursue the matter and knowledge of facts underlying the action that we are persuaded to allow this action to proceed. See *Janicik,* 305 Pa. Super. at 142, 451 A.2d at 461.

Having weighed the factors discussed under Rule 1708, this court finds that certification of the class will promote, rather than hinder, the consistency of adjudications with regard to these claims.

### F. *Rule 1711: Opt-In Class, Not Opt-Out*[23]

The court concludes that Rule 1711(b)(1) applies and that special circumstances exist under (b)(2), which re-

---

23. An "opt-out" class action refers to class actions where every member of the class is included in the class suit unless they file a

quire this court to provide that no person shall be a member of the class unless he or she files of record a written election to be included in the class. Rule 1711(b) provides an exception to the general rule that all class members described in the court's order are included in the class unless they file a written election to opt out. Rule 1711(b) permits the court to provide for an opt-in procedure if: "(1) the individual claims are substantial and the potential members of the class have sufficient resources, experience and sophistication in business affairs to conduct their own litigation; or (2) other special circumstances exist which are described in the order . . . [.]" Pa.R.C.P. §1711(b)(1)(2).

The explanatory note to Rule 1711 explains that "[t]he rule does not attempt to define these 'other' special circumstances which will vary in each particular case. . . . The word 'other' suggests that these special circumstances must be of the same magnitude and character as in (1)." Pa.R.C.P. 1711 explanatory note.

Here, members of the plaintiff class may have substantial claims depending on the nature and extent of the treatment they received from Tremoglie. As mentioned earlier, other Tremoglie patients, by contrast, may not have significant claims because of their limited contact

---

written election to be *excluded* from the class. In short, you're in unless you say you're out. Under Rule 1711, all class actions meeting the prerequisites of Pa.R.C.P. 1702, 1708, 1709, are opt-out class actions unless the provisions of Rule 1711(b) apply. An opt-in class action, by contrast, refers to class suits where no one is included in the class unless they file a written election to be *included* in the class. In short, you're out unless you say you're in. As the following discussion makes clear, the form the class action takes has different consequences under the doctrines of res judicata and splitting causes of action.

with Tremoglie. Persons who choose to opt in will likely be those who had insignificant contacts with Tremoglie or those with substantial claims who decide that the benefit of a large recovery is not worth the detriment of having their mental and physical health records rigorously scrutinized. Because some members of the class may have substantial claims, an opt-in procedure is necessary to protect their interests.

The need to protect persons with large claims also factors into our decision that special circumstances exist which warrant an opt-in as opposed to opt-out class action. Those "special circumstances" are that some Tremoglie patients may have substantial claims for non-economic damages that may be dismissed under the doctrines of res judicata or splitting a cause of action unless this court does not make an exception to the general rule. In short, the court chooses an opt-in procedure because the consequences of failing to opt in are far less drastic than those associated with failing to opt out.

Unlike in an opt-out class action, persons who fail to opt in will not have their claims barred by the doctrine of res judicata because, having not opted in, they were never members of the class.[24] Our Superior Court explained how the res judicata doctrine applies to opt-out class actions in *Taylor v. Shiley Inc.,* 714 A.2d 1064, 1066 (Pa. Super. 1998):

---

24. "Application of the doctrine of res judicata requires that two actions possess the following elements: (1) identity of the thing [being] sued on; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the capacity of the parties." *Taylor v. Shiley Inc.,* 714 A.2d 1064, 1066 (Pa. Super. 1998).

"A judgment in a properly entertained class action is binding on all class members in any subsequent litigation. . . . Class members who elect not to opt out of a class action are 'full members who must abide by the final judgment, whether favorable or adverse.' . . . The judgment is binding on class members as long as they had 'notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel,' had the right to opt out, and were adequately represented." *Id.* (citations omitted)

Persons who do not opt in are in the same position as persons who exclude themselves from an opt-out class suit: they are not members of the class and are not bound by any judgment entered in it. Therefore, an opt in procedure protects Tremoglie patients who inadvertently fail to opt in from having their individual actions barred under the doctrine of res judicata.

Likewise, the doctrine of splitting a cause of action will not apply to persons who fail to opt in because they are not members of the class until they choose to opt in.[25] Accordingly, we conclude that an opt-in procedure is necessary to protect the individual claims of Tremoglie's patients.

As a result, we enter the following:

---

25. Opt-in plaintiffs have foreclosed their rights to pursue personal injury damages because they can't join a class suit for economic damages and then sue individually for personal injury damages. *Kessler v. Old Guard Mutual Insurance Co.,* 391 Pa. Super. 175, 182, 570 A.2d 569, 573 (1990) ("The law does not permit the owner of a single . . . cause of action to divide or split that cause so as to make it the subject of several actions.").

## IV. CONCLUSIONS OF LAW

(1) The class is sufficiently numerous that joinder of all its members would be impracticable.

(2) Plaintiff's fraud/negligent misrepresentation, Consumer Protection Law, breach of contract, breach of confidentiality and invasion of privacy claims present common questions of law and fact that predominate over individual issues.

(3) Plaintiff's claims for negligence and negligence per se do not present common questions of law and fact.

(4) Plaintiff's fraud/negligent misrepresentation, Consumer Protection Law, breach of contract, breach of confidentiality and invasion of privacy claims are typical of those belonging to absent class members.

(5) Plaintiff's claims for negligence and negligence per se are not typical of those claims belonging to absent class members.

(6) Plaintiff's prayer for relief in the form of punitive damages presents common issues of law and fact.

(7) Plaintiff's prayer for relief in the form of punitive damages is typical of the relief belonging to absent class members.

(8) Katlin will fairly and adequately assert and protect the interests of the class under the criteria set forth in Pa.R.C.P. §1709.

(9) Allowing this suit to proceed as a class action provides a fair and efficient method of adjudication of the controversy under the criteria set forth in Pa.R.C.P. §1708.

(10) Special circumstances exist which require that no person shall be a member of the plaintiff class unless he or she files a record of written election to be included in the class.

Accordingly, this court enters the appended order granting and denying certification.

## ORDER GRANTING AND DENYING CLASS CERTIFICATION

And now, June 29, 1999, having considered plaintiff's certification motion and all submissions related thereto, the court orders as follows:

Plaintiff's fraud/negligent misrepresentation, Pennsylvania's Consumer Protection Law, breach of contract, breach of confidentiality and invasion of privacy claims are certified to proceed as a class action limited to economic, nominal, and punitive damages.

Counts I & II for negligence and Count V for negligence per se are not certified.

Plaintiff Harold Katlin shall serve as class representative.

Alan M. Feldman and Thomas More Marrone shall serve as counsel for the class.

The class shall be defined as all persons who were treated by David A. Tremoglie at the Bustleton Guidance Center and who file a written election to be included in this class action by a date to be determined in a subsequent order approving class notice.

No person shall be a member of the plaintiff class unless he files of record a written election to be included in the case by a date to be determined in a subsequent court order approving class notice.

The parties shall submit proposals for a notification procedure and proposed forms of notice to class members within 30 days from the date of this order.